Argued May 11, reversed with instructions July 6, 1962

# BLOHM et al v. GLENS FALLS INSURANCE COMPANY

373 P. 2d 412

*Leo Levenson,* Portland, argued the cause for appellant. On the brief was David Sandeberg, Portland.

*Cleveland C. Cory,* Portland, argued the cause for respondents. With him on the brief were George H. Fraser, Walter H. Evans, Jr., Robert L. Ridgley, and Hart, Rockwood, Davies, Biggs & Strayer, all of Portland.

Before McAllister, Chief Justice, and Rossman, Warner and Perry, Justices.

PERRY, J.

The plaintiffs brought this action against the defendant Glens Falls Insurance Company to recover the expenses they had incurred in defending a personal injury action. The action against these plaintiffs, which they successfully defended, was instituted by one Edward Jarvi.

At the time Jarvi commenced his action against these plaintiffs the plaintiffs tendered the defense of the action to the defendant insurance company on the theory that the incident alleged in Jarvi's complaint was indemnified under the policy issued plaintiffs by defendant. The insurance company refused the tender to defend upon the ground that the pleadings in the Jarvi case disclosed that this incident was not included in the coverage of the policy.

The trial court entered findings of fact and conclusions of law favorable to the plaintiffs, and thereon

a judgment was entered for the plaintiffs. The defendant appeals.

The defendant's policy of insurance for the indemnification of the plaintiffs, in addition to paying such sums for bodily injury to third parties, for which under certain circumstances the plaintiffs should be determined liable, also provided it would

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent;   *   *   *."

The policy also contained an exclusion clause as to products hazard, which, so far as material, reads as follows:

"EXCLUSION OF PRODUCTS HAZARD

"It is agreed that the policy does not apply:

1. to the products hazard as defined in the policy;
2. to a warranty of goods or products within the policy definition of the word 'contract' if the accident occurs after the insured has relinquished possession thereof to others and
   (a) away from premises owned, rented or controlled by the insured or
   (b)   *   *   *   *   *."

Products Hazard is defined in the policy, as follows:

"(f) Products Hazard. The term 'products hazard' means (1) the handling or use of, the existence of any condition in or a warranty of goods or products manufactured, sold, handled or distributed by the named insured, other than equipment rented to or located for use of others but not sold, if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured   *   *   *."

The amended complaint filed by Jarvi against these plaintiffs, insofar as material, is as follows:

## "V.

"That on or about the 5th day of May, 1955, plaintiff entered said store in Portland, Oregon and made inquiry of the defendants concerning a safe power lawn mower and one that was adapted to and safe for use on a lawn that sloped down 5 or 6 feet to a 2-foot retaining wall; that at said time and place in answer to said inquiry defendants recommended to plaintiff that he buy and use on a lawn of that description said 'Whirlwind' 18-inch Rotary Model and in so recommending said mower defendant did falsely represent and warrant that said lawn mower was safe and that an operator's foot could not enter the chamber encompassing the blades thereof, and further that the said mower was adapted to and was safe for use on a lawn having a slope such as described by plaintiff as aforesaid.

## "VI.

"That thereafter and on or about the 6th day of May, 1955, plaintiff returned to said store and the defendants did again falsely warrant and represent that said power lawn mower was safe and that an operator's foot could not enter the chamber encompassing the blades thereof and further *that said mower was adapted to and was safe for use on a lawn having a slope such as described by plaintiff* as aforesaid and said defendants did again recommend to plaintiff that he buy and use on said lawn the said 'Whirlwind' 18-inch Rotary lawn mower.

## "VII.

"That relying upon all of the aforementioned warranties, representations and recommendations plaintiff did purchase from defendants, on or about the 6th day of May, 1955, said 'Whirlwind' 18-inch

Rotary lawn mower recommended by defendant and did pay to defendants a valuable consideration therefor.

## "VIII.

"That *on or about the 6th day of May, 1955,* plaintiff used said lawn mower *on said lawn* and while using the same his left foot entered through an aperture running from the back of said machine through its housing and became entangled in the revolving blades thereof and then and there was cut, mutilated and partially amputated.

## "IX.

"That said representations and warranties were false *in that said lawn mower was not safe and further that an operator's foot could enter the chamber encompassing the blades thereof and further that said mower was not adapted to nor was it safe for use on a lawn having a slope such as described aforesaid by plaintiff.*" (Italics ours).

Jarvi alleged as a second cause of action the above facts and also that the proximate cause of his injuries was the negligence of the defendants, as follows:

"(1) In making the aforesaid warranty and representation that said lawn mower was safe when the defendants, in the exercise of reasonable care, should have known that said lawn mower was not safe;

"(2) In making the aforesaid warranty and representation that an operator's foot could not enter the chamber encompassing the blades of said mower when the defendants, in the exercise of reasonable care, should have known that an operator's foot could enter said chamber;

"(3) In making the aforesaid warranty and representation that said lawn mower was adapted to and was safe for use on a lawn having a slope as described by plaintiff as aforesaid when the defendants, in the exercise of reasonable care, should

have known that said lawn mower was not adapted to and was not safe for use on such a lawn;

"(4) In recommending that plaintiff buy and use said lawn mower when the defendants, in the exercise of reasonable care, should have known that said lawn mower was inherently dangerous for use by plaintiff because it was constructed with an aperture that ran from the back of said machine through its housing and into the chamber encompassing the revolving blades thereof and through which aperture an operator's foot could enter and be cut, mutilated and amputated by such blades;

"(5) In failing to warn plaintiff that the aperture running from the back of said lawn mower through its housing and into the chamber encompassing the revolving blades thereof was so constructed that his foot could enter through said aperture and be cut, mutilated and amputated by such blades;

"(6) In failing to properly instruct plaintiff on the use of said lawn mower."

Jarvi's complaint, as asserted by the plaintiffs, seeks recovery upon two theories, first in negligence upon a breach of warranty as to defects in the machine itself, and second, in negligence because of failure to warn of the dangers inherent in the use of the lawn mower.

■ This court in *Macdonald v. United Pacific Ins. Co.*, 210 Or 395, 311 P2d 425, recognized the majority rule to be that where the complaint against an insured states a cause of action which may lie within the coverage of the policy, it is the insurer's duty to defend. This rule has been stated thus:

"* * * Where the complaint does not state facts sufficient to bring the case clearly within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the cover-

age of the policy. In other words, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor." 29A Am Jur 567, Insurance, § 1454.

Thus, if the complaint is ambiguous or unclear and may be reasonably interpreted to include an incident within the coverage of the policy, there is a duty to defend.

The plaintiffs, in contending there was a duty upon the part of the defendant to defend, argue as follows:

"The Jarvi complaint does allege an accident involving the handling or use of goods or products handled or distributed by plaintiffs which occurred after plaintiffs had relinquished possession to Jarvi, and away from plaintiffs' premises. However, under the allegations of the Jarvi complaint, evidence could have been introduced to show that his injury was caused by 'equipment rented to or located for the use of others but not sold.' It cannot be determined from the face of the complaint that the particular power mower which caused the injury had been 'sold' prior to the accident; thus, the complaint squarely leaves open an available coverage under defendant's policy. In other words, under the allegations of the Jarvi complaint, proof would have been admissible that the mower had been located for purposes of demonstration, or sold on trial or approval. These possibilities were all consistent with the facts alleged in the complaint.

"Furthermore, the Jarvi complaint alleged that 'on or about the 6th day of May, 1955,' Jarvi sustained an injury while using the lawn mower, and that 'on or about the 6th day of May, 1955,' Jarvi did purchase the lawn mower. From these allegations, it cannot be determined whether the alleged accident preceded the purchase, or whether the purchase antedated the injury.

"This Court recently stated in Lewis v. Merrill, [228 Or 541] 365 P2d 1052, following Conroy v. Oregon Construction Co., 23 F 71 (CC D Or), that an allegation that something occurred 'on or about' a certain date is not an averment that it occurred on any distinct day or time, and that the actual day might be either before or after the time stated. Mr. Justice Lusk held that an allegation that an assault occurred 'on or about March twenty-seventh' included at least until the end of March. With respect to the allegation of 'on or about,' Judge Deady stated in the Conroy case (supra, at p. 73): 'In short, the averment amounts to nothing, so far as time is concerned.'"

This argument is fallacious. The exact date may be immaterial, but there is no ambiguity in the complaint as to the sequence of events. The complaint of Jarvi, as set out herein, clearly states that Jarvi contacted these plaintiffs and made inquiry concerning a safe lawn mower, he later returned, and receiving the same assurances that a certain lawn mower was what he wanted he "did purchase" and "did pay to defendants [these plaintiffs] a valuable consideration" for the lawn mower; that he then used the lawn mower and discovered it was not safe, as warranted.

■ The plaintiffs' argument that under the Jarvi complaint it was possible for Jarvi to show that in fact he did not purchase the mower, but only took it on trial or approval, is possible, but we are not permitted to indulge in what the ultimate facts may show which might or might not bring the incident within the liability terms of the policy, but only to inquire whether or not upon fair interpretation of the complaint, a liability may exist under the terms of the policy.

■ The duty to defend is not dependent upon the merits of the action brought against the insured, but

as previously stated, upon the allegations of the complaint. *Macdonald v. United Pacific Ins. Co.*, supra, and *Jarvis et ux v. Indemnity Ins. Co.*, 227 Or 508, 363 P2d 740.

Under the facts presented in this case the parties are bound by Jarvi's statement of the transaction in the complaint, if it is clear and unequivocal, not by what may have been the actual facts of the sale agreement. Jarvi unequivocally says he purchased and paid for the machine.

The plaintiffs also contend that the Jarvi complaint, in alleging that the proximate cause of the injury was the negligence of these plaintiffs in not warning him of the dangers involved in the use of the machine, stated a liability lying within the coverage of the policy and therefore there was a duty to defend. Their argument is that, since the Jarvi complaint in this respect alleged the sole proximate cause of the accident was the negligence of the defendants (plaintiffs here) it had no connection with "a warranty of goods or products." This is undoubtedly true. But this policy of insurance is not concerned solely with the matter of warranty, nor is it concerned with the proximate cause of an accident. The interpretation of the policy lies in determining what liabilities the plaintiffs may incur which the insurance company agrees to indemnify.

The insurer and the assured agreed that no liability should attach to "products hazard as defined in the policy." Products hazard is defined as "the handling or use of * * * goods or products * * * sold, * * * if the accident occurs after the insured has relinquished possession thereof to others and away from" the insured's premises.

The Jarvi complaint, as we have previously pointed out, discloses that the injury to Jarvi occurred out of the use of the lawn mower sold to Jarvi and, as admitted by the plaintiffs away from their premises.

In the case of *Bitts v. General Accident Fire & Life Assur. Corp.*, 282 F2d 542, the United States Court of Appeals for the Ninth Circuit, in interpreting a clause defining "products hazard" which reads identically with the clause in the defendant's policy, stated:

"* * * Here the excluded hazard is not the negligent act proximately causing injury. It is, by express definition, 'the handling or use of' the product sold. It cannot be denied that this was the cause in fact of the injury. Unlike the cited California cases, the clause here expressly provides exclusion 'if the *accident* occurs after insured has relinquished possession * * *.' (Emphasis supplied.) It is the occurrence of the accident itself and not of its negligent cause which is expressly made the determining circumstance. In the area of products liability this is readily understandable. In all such cases the cause of the accident (in the sense of the negligent act or omission which has proximately resulted in injury) has antedated the delivery of the article to the purchaser. To construe this clause as applying only when the proximate cause had occurred after delivery would, of course, result in no effective exclusion of products liability whatsoever.

"Bonell seems to suggest that the duty to warn is a negligent act somewhat apart from products liability and that the latter should be construed to apply only to cases of defective merchandise. The definition of products hazard, as set forth in the policy, not only includes the existence of any condition in a product or of a warranty in a product, but also the handling or use of a product. It cannot be as narrowly defined as Bonell contends. Further, we note that, historically, failure to warn

is one of the bases for holding a vendor or products liable for negligence, Huset v. J. I. Case Threshing Machine Co., 8 Cir., 1903, 120 F. 865, 871, and currently seems to occupy a place of considerable importance in the law of products liability. See 2 Harper & James, The Law of Torts, 28.75; Dillard & Hart, Product Liability; Directions for Use and the Duty to Warn, 41 Va.L. Rev. 145 (1955)."

■ The trial court erred in its failure to sustain the defendants' motion, and the cause is reversed with instructions to set aside the judgment entered and grant defendants' motion for an involuntary nonsuit.