Argued and submitted October 14, 2014, affirmed August 19, 2015, petition for reconsideration allowed April 21, 2016 (359 Or 166)

WEST HILLS DEVELOPMENT COMPANY,
an Oregon corporation,
*Plaintiff-Respondent,*

*v.*

CHARTIS CLAIMS, INC., et al.,
*Defendants,*

*and*

OREGON AUTOMOBILE INSURANCE COMPANY,
an Oregon company,
*Defendant-Appellant.*

OREGON AUTOMOBILE INSURANCE COMPANY,
*Third-Party Plaintiff,*

*v.*

QUANTA SPECIALTY LINES
INSURANCE COMPANY,
*Third-Party Defendant.*

Washington County Circuit Court
C107384CV; A152556

359 P3d 339

Thomas M. Christ argued the cause for appellant. With him on the briefs was Cosgrave Vergeer Kester LLP.

Michael E. Farnell argued the cause for respondent. With him on the brief was Parsons Farnell & Grein, LLP.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

## DEVORE, J.

This insurance dispute stems from an insurer's refusal to defend a general contractor in an earlier action brought by a homeowners association for construction defects. The insurer of a subcontractor rejected the tender of the defense of the general contractor on the grounds that the homeowners' complaint did not identify the subcontractor, allege any improper work by the subcontractor, or specify that damages occurred during the subcontractor's ongoing operations for the general contractor. In this subsequent action, the trial court determined on summary judgment that the subcontractor's insurer breached its duty to defend the general contractor. The insurer appeals. We review for legal error, *Bresee Homes, Inc. v. Farmers Ins. Exchange*, 353 Or 112, 293 P3d 1036 (2012), and conclude that the complaint triggered the insurer's duty to have defended the general contractor. We affirm.

West Hills Development Company (West Hills) was the general contractor for the construction of the Arbor Terrace townhomes. West Hills hired L&T Enterprises, Inc. (L&T) as a subcontractor to install porch columns. L&T was insured under a general liability policy issued by Oregon Automobile Insurance Company (Oregon Auto). Under the policy, Oregon Auto agreed that it would pay all sums that an insured became legally obligated to pay as damages because of bodily injury or property damage and that the insurer would defend an insured against any suit seeking such damages. The policy identified L&T as the named insured. An endorsement amended the policy to include West Hills as an additional insured. The endorsement stated:

> "Section II – Who Is an Insured is amended to include as an insured [West Hills], but only with respect to liability arising out of [L&T's] ongoing operations performed for that insured."

(Boldface omitted.)

In December 2009, the Arbor Terrace Homeowners Association (homeowners) filed a complaint against West Hills alleging a number of defects that caused extensive

weather-related damages.[1] The homeowners alleged that West Hills was negligent in several ways, including super-vision of its subcontractors. They alleged that West Hills was negligent in "[f]ailing to properly coordinate, schedule, oversee, inspect, and supervise contractors, subcontractors, and other workers[,]" and in "[p]roviding improper plans, specifications, instruction, and direction to contractors and subcontractors * * *." The homeowners alleged a number of damages, including

> "defects in the building envelope and other components of each building * * *, which have resulted in water intrusion and property damage to, among other things, siding, trims, sheathing, framing, and interior finishes."

The homeowners identified "specific deficiencies" in the con-struction of the townhomes due to "faulty workmanship, improper or defective materials, noncompliance with appli-cable building codes, industry standards, or manufacturer specifications and guidelines."

Of particular relevance to the appeal, the home-owners' complaint alleged, among other specific deficiencies:

> "Insufficient Weatherproofing. There is insufficient weatherproofing in some areas, *such as* at roof-to-wall transitions, and at *wood posts* supporting the soffits, which terminate on concrete grade topping without weatherproof-ing protection, all of which violate [provisions of the Oregon Structural Specialty Code]."

(Boldface omitted; emphases added.) The complaint indi-cated certain remedies would be required:

> "Remediation of the above-listed deficiencies will include but is not limited to the following:
>
> "* * * * *
>
> "(f) Re-clad *columns* with moisture tolerant assem-blies[.]"

---

[1] The homeowners also sued Arbor Terrace, LLC, the limited liability com-pany that controlled and managed the activities and operations of the Arbor Terrace Townhomes prior to the turnover to the homeowners on July 1, 2006. That company's participation in the lawsuit is not relevant to this appeal, and we do not discuss it further.

(Emphasis added.) The complaint added that, "[w]hen the [individual homeowners] purchased their units * * *, they did not know that the deficiencies in the building envelope and other components existed and *had already started to cause property damage.*" (Emphasis added.)

On April 5, 2010, West Hills tendered the defense of the homeowners' action to Oregon Auto, asserting that West Hills was an additional insured under the insurer's policy with L&T. The tender letter included a copy of the homeowners' complaint and reported that L&T was involved in the construction of Arbor Terrace. The letter explained, "Specifically, your insured installed the front porch columns. The Complaint implicates work performed by your insured at Arbor Terrace."

In September 2010, Oregon Auto wrote a letter declining the tender of defense. West Hills' attorney denies receiving the letter. The letter advised that Oregon Auto refused to defend West Hills because the insurer read the complaint to mean that the damages had occurred after L&T had completed its work, not during L&T's "ongoing operations," as the insurer believed that the endorsement required.

With its tender denied or thought to be ignored, West Hills filed a third-party complaint against L&T within the homeowners' case in May 2010, alleging that, if West Hills were proved liable to the homeowners, then L&T should be liable to West Hills for those construction defects due to L&T's negligent workmanship.[2] Oregon Auto defended L&T against West Hills' claims and eventually contributed to the settlement of L&T's liability to the homeowners.

In November 2010, while the homeowners' action was being litigated, West Hills filed an action against Oregon Auto, seeking a declaration that the insurer had breached its contractual obligation to defend West Hills. The general contractor sought to recover $28,884.42 as one-eighth of

---

[2] Contrary to Oregon Auto's description, the third-party complaint did not assert that L&T was liable while West Hills was not liable to the homeowners. *See* ORCP 22 C (a defending party, as third-party plaintiff, may serve a complaint upon a third party for all or part of the original claim for which the defendant, now third party plaintiff, may also be liable to the original plaintiff).

the cost it incurred in defending against the homeowners' action.[3]

Before this coverage case was concluded, the homeowners amended their complaint in the underlying case twice. On January 24, 2011, the second amended complaint added a more specific allegation about defective construction:

"Improperly Constructed Porch Columns. Horizontal and projecting trims on porch columns are not flashed, resulting in elevated moisture content and organic growth. The cladding and wood trims are not jointed in a weather-proof manner and are installed in direct contact with concrete flatwork. The end cuts of the wood trim are not primed or painted. The back framing is inadequately secured to prevent racking, twisting and displacement. The column posts are embedded in the concrete flatwork."

(Boldface omitted.) West Hills did not repeat its tender of the defense by sending a copy of the newest complaint to Oregon Auto. Nevertheless, in the meantime, Oregon Auto maintained a claim file for its defense of L&T in the homeowners' litigation. The same adjuster, who had denied West Hills' tender, managed the defense of the claim against L&T and, according to West Hills, would have become aware of the later amendments to the homeowners' complaint.

The trial court was to conclude that Oregon Auto had breached its duty to defend West Hills. The court first ruled that West Hills was an "insured" under the policy. The court determined that the complaint included allegations that West Hills negligently supervised subcontractors and that damage was caused by improperly constructed porch columns, among other things. In its letter opinion, the court referenced the original and later complaints of the homeowners. Because L&T was the subcontractor that worked on the porch columns, the court reasoned that "there is a possibility from the complaint that West Hills could be liable for work performed on the porch columns by [L&T]."

---

[3] The total defense cost was $231,075.32. West Hills tendered its defense to eight insurers in all. Later, two insurers, Quanta Specialty Lines Insurance Company and Risk Retention Group, respectively, ratified West Hills' claim under ORCP 26 and assigned a contribution claim to West Hills so that West Hills could pursue this claim against Oregon Auto.

Rejecting the insurer's view that the damage must occur during L&T's ongoing operations, the court adopted West Hills' argument that, because the endorsement's limitation is ambiguous, the endorsement covers liability arising out of the subcontractor's work even if damage occurred later. The court entered judgment on coverage in favor of West Hills.[4]

On appeal, Oregon Auto insists that it had no duty to defend West Hills in the homeowners' action. The insurer contends that, under the homeowners' original complaint and the policy, there is no possibility that the complaint alleged a liability against West Hills that the policy covered. Oregon Auto stresses that the original complaint did not identify L&T as a subcontractor, did not mention improperly constructed porch columns, and did not assert that the damage to townhomes occurred during L&T's work on the project. We disagree.

"An insurer has a duty to defend an action against its insured if the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the policy." *Ledford v. Gutoski*, 319 Or 397, 399-400, 877 P2d 80 (1994). We examine just two documents to determine whether an insurer has a duty to defend an action against its insured: the insurance policy and the complaint in the action against the insured. *Oakridge Comm. Ambulance v. U.S. Fidelity*, 278 Or 21, 24, 563 P2d 164 (1977). Considering those two documents, "if the injured claimant can recover under the allegations of the complaint upon any basis for which the insurer affords coverage," we conclude that the insurer is obligated to defend the insured. *Casey v. Northwest Security Insurance Company*, 260 Or 485, 489, 491 P2d 208 (1971). "Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured." *Ledford*, 319 Or at 400 (citing *Blohm et al v. Glens Falls Ins. Co.*, 231 Or 410, 416, 373 P2d 412 (1962)).

---

[4] Thereafter, the trial court entered a supplemental judgment that awarded West Hills its attorney fees. That judgment is not at issue in this case but is the subject of a separate appeal that is currently under advisement in this court, *West Hills Development Company v. Chartis Claims, Inc.* (A154695).

Generally, the determination of the duty to defend is confined to the complaint and the policy, but the rule has an exception. In *Fred Shearer & Sons, Inc. v. Gemini Ins. Co.*, 237 Or App 468, 476, 240 P3d 67 (2010), *rev den*, 349 Or 602 (2011), we noted that extrinsic evidence could be used to address "the preliminary question: whether the party seeking coverage was actually an *insured* within the meaning of the policy." *Id.* at 476 (emphasis in original). The reasons for such an exception are that "an insured's relationship with its insurer may or may not be relevant to the merits of the plaintiff's case in the underlying litigation[,]" and the plaintiff is not required to plead facts to "establish the nature of the defendant's relationship to some other party or to an insurance company in order to prove its claim." *Id.* at 477. We rejected a rigid application of the so-called four-corners rule, which looks only to the four corners of the two documents to determine whether a party is an insured. *Id.* at 478 (treating as "analytically distinct" the inquiries into "(1) whether [the plaintiff] was an 'insured' within the meaning of the policy and (2) if so, whether the alleged conduct falls within the scope of coverage").

Although we affirm, our explanation differs somewhat from that of the trial court. To make matters simpler, we do not need to decide the issues related to the second amended complaint, such as whether West Hills should have renewed its tender with a copy of the homeowners' second amended complaint or whether possession of the second amended complaint by the same claims representative handling the West Hills tender and the L&T defense made a repeated tender unnecessary, because we conclude that the original complaint triggered a duty to defend.

To trigger the duty to defend, a complaint needs only to make allegations with which a claim covered by the policy may be proven. The insurer is charged with the responsibility to recognize the insured's exposure that the complaint presents. *See Ledford*, 319 Or at 400 (finding duty to defend generally); *see also Abrams v. General Star Indemnity Co.*, 335 Or 392, 67 P3d 931 (2003) (finding duty to defend a case due to potential conversion claim, despite intentional conduct alleged). The original complaint alleged that West Hills negligently supervised its contractors. It alleged that defects

resulted from negligent supervision by "[f]ailing to properly coordinate, schedule, oversee, inspect, and supervise contractors, subcontractors, and other workers." Consequently, the original complaint alleged facts which, if proved, could subject West Hills to liability for work by a subcontractor.

L&T was a subcontractor. It did not need to be identified in the complaint for the insurer to recognize its responsibility. In accord with *Shearer*, extrinsic evidence could be considered in order to identify West Hills as an additional insured. 237 Or App at 476. West Hills reported to Oregon Auto that L&T, the policy's named insured, was West Hill's subcontractor on the same property that was the subject of the complaint. In its tender letter, West Hills reported, "Specifically, your insured [L&T] installed the front porch columns. The Complaint implicates work performed by your insured at Arbor Terrace."

Oregon Auto argues that the tender letter should not be considered as extrinsic evidence, nor, seemingly, as pointing toward extrinsic evidence. Oregon Auto contended in the trial court that a "person who claims to be insured must submit evidence to the insurer" to establish that the "person qualifies as an additional insured under a policy." According to the insurer,

> "Despite this rule, the tender by West Hills to [Oregon Auto] was limited to self-serving representations in the tender letter, and the allegations of the Complaint in the Liability Suit. Neither constitutes extrinsic evidence.
>
> "* * * * *
>
> "West Hills' tender letter represented that L&T was involved in the Project. Again, that representation is not evidence."

On appeal, Oregon Auto elaborated, relying on a uniform jury instruction:

> "[T]here is no extrinsic evidence in this case. When plaintiff tendered the complaint to defendant, it tendered only the complaint. The cover letter included some argument by plaintiff's lawyer about why defendant should accept the tender. But, of course, argument isn't evidence, as jurors are instructed every day in the courtrooms of this state.

> *See* UCJI 5.01 ('The lawyers' opening statements and closing arguments are not part of the evidence.')"

(Emphasis and record citations omitted.) The issue, however, is not the admissibility under the Oregon Evidence Code of the information provided to the insurer, as if the insurer were a court. The function of the tender letter is to invoke the insurer's duty to defend; the insurer then can readily verify its information, whether by reference to its declaration pages, a telephone call to its named insured, or, upon reasonable inquiry, a review of the subcontract between West Hills and L&T. Indeed, the role of L&T in the project has never been disputed, then or now. As such, the allegation of negligent supervision of contractors, together with the reported involvement of L&T, informed Oregon Auto that its duty to defend was at issue.[5]

The more serious question was whether the complaint alleged damage for which L&T was responsible. "The insurer has a duty to defend if the complaint provides *any basis* for which the insurer provides coverage." *Ledford,* 319 Or at 400 (citing *Nielsen v. St. Paul Companies,* 283 Or 277, 280, 583 P2d 545 (1978) (emphasis in original)). West Hills noted that the original complaint about "Insufficient Weatherproofing" implicated L&T's work on the porch columns and posed a threat of liability covered under the policy. As noted above, that allegation asserted:

> "Insufficient Weatherproofing. There is insufficient weatherproofing in some areas, such as at roof-to-wall transitions, and at wood posts supporting the soffits, which terminate on concrete grade topping without weatherproofing protection, all of which violate [provisions of the Oregon Structural Specialty Code]."

---

[5] Before the trial court, Oregon Auto argued that West Hills was obligated but failed to offer (to the insurer) extrinsic evidence to show the insurer's coverage of West Hills. On appeal, Oregon Auto argues instead that L&T is *barred* from offering (to the court) certain extrinsic evidence to show coverage; that is, the insurer contends that extrinsic facts relating to the duty to defend cannot be considered when they also relate to the underlying liability. Whatever the validity of that new twist on the old idea that the court does not decide liability when deciding the duty to defend, we do not address the argument, because it was not presented to the trial court and was not preserved for consideration on appeal. *See Miller v. C. C. Meisel Co., Inc.,* 183 Or App 148, 171-72, 51 P3d 650 (2002) (argument on appeal different from argument to trial court).

(Boldface omitted.) The original complaint was not intended to be an exclusive list of defects. The homeowners alleged that "[t]here are defects in the building envelope *and other components of each building* * * *, which have resulted in water intrusion and property damage to, *among other things,* siding, trims, sheathing, framing, and interior finishes." (Emphases added.) In requesting remediation of defects, the homeowners' complaint added that remedies "will include but is not limited to the following: * * * Re-clad *columns* with moisture tolerant assemblies." (Emphasis added.) Taken together, those allegations of the original complaint fairly apprised Oregon Auto that the columns constructed by L&T could become a basis for the liability of West Hills. Unless a policy limitation ruled out coverage, the homeowners' complaint posed a duty to defend West Hills.

From the outset, Oregon Auto has insisted that its duty to defend does not arise because coverage is limited by the terms of the additional insured endorsement. Most of the debate focused on the endorsement's paragraph A, containing the "ongoing operations clause," but the debate included reference to paragraph B, home of an exclusion. In relevant part, the two paragraphs of the endorsement provide:

"A.   Section II - Who Is An Insured is amended to include as an insured the person or organization shown in the Schedule [*i.e.,* West Hills], *but only with respect to liability arising out of* [L&T's] *ongoing operations performed for that insured.*

"B.   With respect to the insurance afforded to these additional insureds, the following exclusion is added:

"2.   Exclusions

"This insurance does not apply to 'bodily injury' or 'property damage' occurring after:

"(1)   All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed[.]"

(Boldface omitted; emphasis added.)

The parties dispute whether "liability arising out of [L&T's] ongoing operations" required damages to have occurred while the subcontractor was still on the job. Oregon Auto reads "liability" to presuppose the occurrence of damages and "ongoing operations" to mean "during" operations for the additional insured—that is, for West Hills. West Hills argues that "arising out of" is a phrase of broader meaning than "during" and that "ongoing operations" means simply "operations." In the view of West Hills, coverage is provided for liability that arises from, or because of, the subcontractor's operations, which were at the time ongoing, even if the damage occurs after the subcontractor's work is done.

West Hills adds that the exclusion in paragraph B would become unnecessary, superfluous, or at least confusing if "the ongoing operations" clause in paragraph A required damage that occurs *during* L&T's work. West Hills reasons that paragraph A would provide a shorter period of coverage than the exclusion in paragraph B. West Hills explains that paragraph B's exclusion denies insurance for damage occurring after "all work" done by the "additional insured" is done. Because the "additional insured" is the general contractor, the exclusion would not operate until the entire project is complete—not just the subcontractor's part of it. By contrast, paragraph A's term, according to the insurer, would end coverage sooner when the subcontractors "ongoing operations" cease.

The trial court found the endorsement to be ambiguous, but the dispute is another one that we do not need to resolve. This case involves only the duty to defend, and enough is alleged to have triggered the duty to defend—without resolution of the construction of this additional insured endorsement. The original complaint pleaded the possibility of damage occurring even within the narrower coverage Oregon Auto understands. The original complaint would permit proof of damages before L&T finished its work.

Oregon Auto is correct that the homeowners' complaint did not specify when the damage to the townhomes occurred. Like any plaintiffs, they may have had no motivation to be specific or to plead matters significant to insurance coverage, especially when pleading broadly may help them

to implicate policy years of multiple insurers. Nonetheless, the original complaint stated, "When the [homeowners] purchased their units at Arbor Terrace Townhomes, they did not know that the deficiencies in the building envelope and other components *existed and had already started to cause property damage.*" (Emphasis added.) We concur with West Hills in reading the allegation to permit proof at trial that the possibility that damages occurred before one or more of the homeowners purchased units and before L&T had finished its work. The complaint does not *rule out* the possibility that damage occurred before L&T finished.

In *Bresee Homes, Inc.*, the Supreme Court confronted a similar situation involving ambiguous pleadings and the duty to defend. A contractor sought a defense against a construction-defect claim brought by the homeowners. 353 Or at 114-15. The insurer denied the defense, contending that coverage was precluded by an exclusion from coverage for damages arising out of completed operations. *Id.* In an action for breach of contract and declaratory judgment, the contractor contended that the homeowners' complaint could be reasonably construed to include a covered loss—that is, that the property damage occurred before the completion of construction. The Supreme Court considered the uncertain allegation in the homeowners' complaint. It found:

> "Some aspects of [the homeowners'] complaint are noteworthy. The allegations do not state whether the claimed damages * * * occurred before or after the completion of [the contractor's] work. From all that appears from a reading of the complaint, the described property damage occurred, or could have occurred, when [the contractor's] work was neither completed nor 'deemed complete' under the [coverage exclusion]."

*Id.* at 122. The insurer, like Oregon Auto, argued that the allegation should be read to say damages occurred after the contractor finished its work, but the court was not persuaded. Nothing in the complaint foreclosed the possibility of damage during coverage. The insurer, like Oregon Auto, argued that the contractor bore the burden of demonstrating that the work was *not* completed when the damage occurred, but, again, the court was unpersuaded. With the duty to defend, the contractor had no burden to come forward with

facts beyond those alleged in the complaint. Accordingly, the court concluded that summary judgment for the insurer was improper.

That case guides our decision here. The homeowners' suit does not allege when the property damage occurred, but it does indicate that, when the homeowners bought their units, the alleged deficiencies "existed and had already started to cause property damage." Given the ambiguity of that statement, and given that any ambiguity in the complaint relating to coverage must be resolved in favor of the insured, *Ledford*, 319 Or at 400, we conclude that the complaint contains allegations that could allow for proof at trial that the damages occurred during L&T's ongoing operations.

For these reasons, we concur with the trial court, albeit on narrower grounds. The trial court did not err in granting summary judgment recognizing Oregon Auto's duty to have defended West Hills in the Arbor Terrace litigation. Nor did the trial court err in entering judgment for the recovery of the proportionate share of defense costs incurred in West Hills' defense.

Affirmed.