650 December 8, 2016 No. 77

IN THE SUPREME COURT OF THE
STATE OF OREGON

WEST HILLS
DEVELOPMENT COMPANY,
an Oregon corporation,
*Respondent on Review,*

*v.*

CHARTIS CLAIMS, INC., et al.,
*Defendants,*

*and*

OREGON AUTOMOBILE
INSURANCE COMPANY,
an Oregon company,
*Petitioner on Review.*

OREGON AUTOMOBILE
INSURANCE COMPLANY,
*Third-Party Plaintiff,*

*v.*

QUANTA SPECIALTY LINES
INSURANCE COMPANY,
*Third-Party Defendant.*

(CC C107384CV; CA A152556; SC S063823)

En Banc

On review from the Court of Appeals.*

Argued and submitted September 20, 2016.

Thomas M. Christ, Cosgrave Vergeer Kester LLP, Portland, argued the cause and filed the briefs for petitioner on review.

Michael E. Farnell, Parsons Farnell & Grein, LLP, Portland, argued the cause and filed the brief for respondent on review. Also on the brief were Steven R. Powers and W. Blake Mikkelsen.

_____

* Appeal from Washington County Circuit Court, D. Charles Bailey, Judge. 273 Or App 155, 359 P3d 339 (2015).

Linda B. Clapham, Carney Badley Spellman PS, Seattle, filed the brief for *amici curiae* Property Casualty Association of America and National Association of Mutual Insurance Companies.

Nicholas A. Thede, Ball Janik, LLP, Portland, filed the brief for *amicus curiae* Oregon-Columbia Chapter of the Associated General Contractors. Also on the brief was Kyle A. Sturm.

Nadia H. Dahab, Stoll Stoll Berne Lokting & Shlachter PC, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

BREWER, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**BREWER, J.**

This case presents a question about a liability insurer's duty to defend an insured against a civil action. Ordinarily, courts decide whether an insurer had a duty to defend by comparing the provisions of the insurance policy to the allegations of the complaint against the insured, without regard to extrinsic evidence. *Bresee Homes, Inc. v. Farmers Ins. Exchange*, 353 Or 112, 116, 293 P3d 1036 (2012). In this case, the trial court and the Court of Appeals concluded that extrinsic evidence should be considered, and after considering such evidence, held that the insurer had a duty to defend. On review, we agree that the insurer had a duty to defend and therefore affirm. We do not see any need to resort to extrinsic evidence, however, or to modify our existing case law regarding when an insurer has a duty to defend.

## I. OVERVIEW OF DUTY TO DEFEND

Before we discuss the facts of this case, it is helpful to set out the legal principles that govern our analysis.

### A. *Duty to Defend and Duty to Indemnify*

When an insured purchases an insurance policy that protects against liability, the insurer typically agrees to assume multiple duties to the insured. Typically the insurer agrees to pay the insured for any liability that is covered by the policy (up to the policy limits). That contractual obligation is known generally as the duty to indemnify. *See Bresee Homes*, 353 Or at 114; *Ledford v. Gutoski*, 319 Or 397, 405, 877 P2d 80 (1994). Another important duty commonly found in liability policies is an agreement to defend the insured in legal actions involving claims covered by the policy. That contractual obligation is known generally as the duty to defend. *See FountainCourt Homeowners v. FountainCourt Develop.*, 360 Or 341, 354, 380 P3d 916 (2016).

Although both duties turn on the terms of the policy, the two duties are independent. *See Bresee Homes*, 353 Or at 114; *City of Burns v. Northwestern Mutual*, 248 Or 364, 368, 434 P2d 465 (1967). Thus, there are occasions when an insurer has a duty to defend, but if trial ends with a verdict that is *not* covered by the policy, then the insurer has

no duty to indemnify. *See [ZRZ Realty v. Beneficial Fire and Casualty Ins.](#)*, 349 Or 117, 150, 241 P3d 710 (2010), *[on recons](#)*, 349 Or 657, 249 P3d 111 (2011). Conversely, there are times when an insurer does not have a duty to defend, but if the trial ends with a judgment that *is* covered by the policy, then the insurer will have a duty to indemnify. *Ledford*, 319 Or at 403; *City of Burns*, 248 Or at 368-69.

As discussed, the issue here involves the duty to defend under a liability policy. We consider in more detail, then, the circumstances that trigger an insurer's duty to defend.

B. *Duty to Defend: Four-Corners Rule*

An insurer's duty to defend, according to the widely accepted "four-corners" rule, is determined by comparing the complaint to the insurance policy. *See, e.g, Restatement of Liability Insurance* § 13 comment a (tentative draft no. 1, April 11, 2016) (so noting). The rule refers to the four corners of the complaint; it also sometimes is referred to as the eight-corners rule (for the four corners of the complaint plus the four corners of the policy). *Id.* However denominated, under that rule, one compares the allegations in the complaint to the insurance policy's terms. *See, e.g., Bresee Homes*, 353 Or at 116 (court determines duty to defend using two documents: insurance policy and complaint); *[Marleau v. Truck Insurance Exchange](#)*, 333 Or 82, 89, 37 P3d 148 (2001) (same); *Ledford*, 319 Or at 399 (same). If the allegations in the complaint assert a claim covered by the policy, then the insurer has a duty to defend. *E.g.*, Id. at 399-400. If the allegations do not assert a claim covered by the policy, then the insurer has no duty to defend. *Id*. By limiting the analysis to the complaint and the insurance policy, the four-corners rule generally prevents consideration of extrinsic evidence.

The four-corners rule originates in the insurance contract itself. Although the text of liability policies may vary, an insurer typically includes a provision making its duty to defend turn on the plaintiff's allegations. *See* Ellen S. Pryor, *The Tort Liability Regime and the Duty to Defend*, 58 Md L Rev 1, 21-22 (1999) (so noting after quoting various standard contractual provisions); Comment, *The Insurer's Duty to Defend Under A Liability Insurance Policy*, 114 U Pa

L Rev 734, 734 (1966) (noting that a four-corners rule "seems to fall squarely within the 'alleging such injury' language in the policy"). *Compare* James M. Fischer, *Broadening the Insurer's Duty to Defend: How* Gray v. Zurich Insurance Co. *Transformed Liability Insurance Into Litigation Insurance*, 25 UC Davis L Rev 141, 150 (1991) (agreeing that duty arises from contract, but suggesting that some courts had delineated duty in a way more suggestive of public-policy norms). As we will discuss later, the liability policy at issue here itself incorporates the four-corners rule.

The Court of Appeals has articulated an exception to the four-corners rule, allowing extrinsic evidence to be used to show that a putative insured did, in fact, occupy insured status and therefore was entitled to a defense. In [*Fred Shearer & Sons, Inc. v. Gemini Ins. Co.*](), 237 Or App 468, 240 P3d 67 (2010), *rev den*, 349 Or 602 (2011), the Court of Appeals concluded that extrinsic evidence could be used to show that a person who claimed to be an "additional insured" under a liability policy was in fact an insured entitled to a defense. In that case, the "additional insured" policy stated that it applied to "'all vendors'" of a product "'in the regular course of the vendor's business.'" *Id*. at 472. The complaint against the putative additional insured did not allege that it was a vendor of the product in the regular course of business. However, there was no factual issue regarding whether it was, as to the circumstances alleged in the complaint, in fact a vendor in the regular course of business. *Id*. at 474, 478 n 9. The Court of Appeals held, under those circumstances, that it would be appropriate to allow the use of extrinsic evidence to establish the facts relevant to whether the person was an "insured"—in that case, facts that were undisputed, albeit not facts alleged in the complaint. *Id*. at 476-77. Accordingly, the court upheld judgment against the insurer even though "the underlying pleadings did not affirmatively demonstrate" that the defendant met the conditions to be an additional insured. *Id.* at 478.

## II.   FACTS

With that background, we turn to the facts in this case. The trial court granted judgment for West Hills based on the following undisputed facts. West Hills was the

general contractor for a townhome development in Sherwood, Oregon. West Hills hired L&T Enterprises, Inc. (L&T) as a subcontractor on the project. The terms of the subcontract between West Hills and L&T are not directly relevant to the legal issue presented here, but they do serve as useful context to orient the reader. The subcontract required L&T to indemnify West Hills against any liability that West Hills might incur for L&T's work. The subcontract also required L&T to obtain a liability insurance policy, and to name West Hills as an additional insured on that policy.

Construction contracts that combine those obligations—an agreement by the subcontractor to indemnify, joined with an agreement to name the general contractor as an additional insured on the subcontractor's insurance policy—are fairly common. Samir B. Mehta, Comment, *Additional Insured Status in Construction Contracts and Moral Hazard*, 3 Conn Ins L J 169, 169-70 (1996). Parties to such contracts often agree that the subcontractor will name the general contractor as an additional insured in order to "confer upon the additional insured [the general contractor] direct rights with respect to defense coverage." *Id.* at 175. Although the general contractor is entitled to eventual reimbursement under the indemnity provision, the general contractor may be listed as an additional insured to gain the right "to have the insurer pay for the costs of defense/ resolution as they are incurred." *Id.* at 176-77 (footnote omitted).

A. *Insurance Policy Provisions*

L&T complied with its subcontract by obtaining a commercial general liability policy from petitioner on review Oregon Automobile Insurance Company.[1] The policy provided that Oregon Auto would defend its insured against certain lawsuits, and also provided that Oregon Auto would pay certain damage awards up to a specified amount. Regarding the duty to defend, the policy stated:

"We will have the right and duty to defend the insured against any 'suit' seeking those damages [to which this

---

[1] The first policy was issued in 2004, and it was renewed annually for two more years. Although the three policies cover different time periods, they are generally identical in their relevant terms.

insurance applies]. However, we will have no duty to defend the insured against any 'suit' seeking damages * * * to which this insurance does not apply."

The policy further defined "suit" as "a civil proceeding in which damages * * * to which this insurance applies are alleged."

Oregon Auto's duty to defend was owed to anyone who qualified as an insured under the terms of the policy. L&T, pursuant to its subcontract with West Hills, negotiated with Oregon Auto to have West Hills listed, by name, as an additional insured on the policy. Oregon Auto did not agree to provide West Hills with the same range of coverage that it provided to L&T, however. In addition to other limits on policy coverage, the policy provided that West Hills was an insured "only with respect to liability arising out of [L&T's] ongoing operations performed for [West Hills]."[2]

B.  *Complaint Against West Hills*

In December 2009, the homeowners association for the townhome development, Arbor Terrace Homeowners Association (Arbor Terrace), filed an action against (as relevant here) West Hills. The complaint alleged that the townhomes had had defects that led to damage from water intrusion. The alleged defects included, among other things, improperly installed siding and trim, improper or insufficient flashing, insufficient weatherproofing, and improper sealants.

The complaint alleged that West Hills had been negligent in a number of respects. As relevant here, the complaint alleged that West Hills's subcontractors had been negligent, and that West Hills was liable because of that

---

[2] The last policy phrased the West Hills limitation somewhat differently. That policy provided that West Hills was an additional insured

"only with respect to liability for 'bodily injury,' 'property damage' or 'personal and advertising injury' caused by [L&T's] ongoing operations for [West Hills] at the location(s) designated above and only to the extent that such 'bodily injury,' 'property damage' or 'personal and advertising injury' is caused by [L&T's] negligence or the negligence of those performing operations on [L&T's] behalf."

On review, Oregon Auto makes no argument that depends on those additional terms.

negligence. Specifically, the complaint alleged that West Hills had hired and supervised subcontractors and had been negligent in "[f]ailing to properly *** oversee, inspect, and supervise *** subcontractors" and "[f]ailing to notify *** subcontractors *** of improper construction means and methods." The complaint contained very little information regarding the time when the damages allegedly occurred. The complaint did allege, however, that when the owners purchased the townhomes, the defects in the townhomes already "existed and had already started to cause property damage."

The parties dispute the degree to which the complaint alleged defects in the specific work that L&T had performed under its subcontract: installing front porch columns. As we will explain, we can resolve this case without reference to those allegations.

C.  *West Hills Tenders Defense to Oregon Auto*

After being served with the complaint, West Hills sent a letter to Oregon Auto invoking Oregon Auto's duty to defend West Hills as an additional insured. The letter, which enclosed a copy of the complaint, added that L&T was a subcontractor on the project and had installed the front porch columns. Oregon Auto refused to defend West Hills, however, on the ground that the damages alleged in the complaint arose from "completed operations" rather than "ongoing operations."[3]

D.  *Result of Arbor Terrace's Action; West Hills's Action Against Oregon Auto*

In Arbor Terrace's action, West Hills filed a third-party complaint against L&T and the other subcontractors. Eventually, Arbor Terrace's claims were settled. West Hills then filed its own action against Oregon Auto (among other insurers) for Oregon Auto's proportional share of its defense costs in the Arbor Terrace action. Ultimately, the case was tried to the court on stipulated facts.

---

[3] Oregon Auto's letter offered a different justification for denying coverage under the third policy, asserting that the townhome development project "was not scheduled on the policy" as required. Oregon Auto does not renew that argument on review.

Oregon Auto argued to the trial court that West Hills had failed to show that it qualified as an insured for purposes of the duty to defend. Oregon Auto observed that, although West Hills was named as an additional insured, it was an additional insured only to the extent of liability based on L&T's ongoing operations. Oregon Auto contended that "ongoing operations" required that the damages sought must have been incurred while L&T was actually working on the project, not later. Arbor Terrace's complaint, Oregon Auto asserted, did not show that damages had been incurred while L&T was actually working on the project, nor had West Hills introduced any extrinsic evidence to show that particular timing for the damages.

West Hills countered, arguing (among other arguments) that Arbor Terrace's complaint itself was sufficient to trigger Oregon Auto's duty to defend. The allegations in that complaint, it contended, were sufficient to create the possibility that West Hills would have been subject to liability for L&T's ongoing operations. Additionally, West Hills asserted that the "ongoing operations" provision was not as limited as Oregon Auto had argued. Because the policy applied to damages "*arising out of* ongoing operations," West Hills contended that consequential damages that resulted from L&T's work were sufficient to fall within the policy.

E. *Trial Court Judgment for West Hills*

The trial court granted judgment for West Hills. In a letter explaining its decision, the court concluded that Oregon Auto had a duty to defend "unless it is all but crystal clear that the policy does not impose coverage." The court rejected Oregon Auto's contention that the term "ongoing operations" was limited to property damage that occurred only during L&T's operations. The court agreed that the provision could be read that way. But the court concluded that the provision also could be read more broadly, as West Hills had urged. Because it concluded that the provision was ambiguous, the court construed the provision against Oregon Auto.

The court also held that the complaint against West Hills contained allegations sufficient to trigger Oregon Auto's duty to defend. The complaint alleged damage due to

improperly constructed porch columns; L&T was the sub-contractor that worked on the porch columns; and thus, the court reasoned, West Hills might be held liable for L&T's work. In so concluding, it appears that the court relied on extrinsic evidence to determine that L&T was the subcontractor that had worked on the porch columns.

F.   *Appeal to Court of Appeals*

On appeal, Oregon Auto maintained that the allegations against West Hills in Arbor Terrace's complaint did not trigger its duty to defend. The policy only covered West Hills for L&T's liability, but the complaint—according to Oregon Auto—only alleged that West Hills *itself* had been negligent. Because, as Oregon Auto saw things, the complaint did not name L&T or allege that West Hills was liable for L&T's negligence, the four-corners rule was not satisfied. Oregon Auto also asserted that extrinsic evidence could not be considered, arguing that *Shearer* permitted extrinsic evidence only when the added fact related to coverage but not to liability. Finally, Oregon Auto renewed its argument that the policy restriction to "ongoing operations" required that any covered damages must have occurred while L&T was working on the project.

The Court of Appeals nevertheless affirmed. *West Hills Development Co. v. Chartis Claims*, 273 Or App 155, 359 P3d 339 (2015). The court held that Arbor Terrace's complaint did not need to identify L&T, because, under *Shearer*, West Hills could introduce extrinsic evidence to show that it qualified as an additional insured. *Id.* at 163. West Hills did so, the court opined, when it sent the letter tendering the defense to Oregon Auto. *Id.* at 163-64. The court further held that the complaint alleged damages for which L&T was responsible, because it specifically referred to the porch columns that L&T had constructed. *Id.* at 164-65.

The Court of Appeals deemed it unnecessary to resolve the exact meaning of the "ongoing operations" provision. *Id.* at 166-67. Even if Oregon Auto was correct that it required that the damages occur while L&T was working on the project, the court stated, the allegations in the complaint satisfied that narrower definition. The Arbor Terrace complaint alleged that damage had already started to occur

when the purchasers had bought the townhomes, and that was sufficient. As the court explained, the allegation "does not *rule out* the possibility that damage occurred before L&T finished." *Id*. at 167 (emphasis in original).

## III.  DISCUSSION

On review, Oregon Auto makes two main arguments. First, it asserts that the Court of Appeals should not have looked beyond the face of the Arbor Terrace complaint to determine whether there was a duty to defend. Second, Oregon Auto contends that the duty to defend is not triggered merely because a complaint fails to "rule out" the possibility of coverage. Instead, it asserts that the duty to defend applies only if the complaint "rules in" coverage. Although Oregon Auto focuses its second argument on the Court of Appeals' conclusion that that court did not need to resolve the meaning of "ongoing operations" in the policy, that argument in fact implicates the applicable legal standard as a whole.

### A.  *Insurance Policy Here Incorporates Four-Corners Rule*

We begin with the four-corners rule generally. As noted, the four-corners rule derives from the insurance policy itself. We find that principle in the insurance policy here. The policy states that Oregon Auto will "defend the insured against any 'suit' *seeking* those damages" that are covered by the policy.[4] (Emphasis added.) As noted, the term "suit" is defined by the policy as "a civil proceeding in which damages *** to which this insurance applies *are alleged*." (Emphasis added.) Oregon Auto thus contractually agreed that its duty to defend turns on a plaintiff's allegations against its insured.

### B.  *Four-Corners Rule and Indefinite Complaints*

On its face, the four-corners rule seems clear. Applying that rule to real world complaints, however, can create more of a challenge. In particular, a complaint may not definitively allege the facts that ultimately will determine whether a claim is covered by the policy.

---

[4] *See also* Pryor, 58 Md L Rev at 22 (quoting almost identical text from a standard insurance policy as an example that triggers the four-corners rule).

Chief Judge Learned Hand addressed that problem in *Lee v. Aetna Casualty & Surety Co.*, 178 F2d 750 (2d Cir 1949). In *Lee*, a pet store's liability policy excluded injuries arising out of the use of an elevator. The plaintiff had gone to the store seeking a pet located on the fifth floor. The president of the store opened the gate to the elevator and gestured for the plaintiff to step inside—but the elevator was not there, and the plaintiff fell down the shaft. The plaintiff sued the store and ultimately obtained a judgment against it. *See Lee v. Aetna Casualty & Surety Co.*, 81 F Supp 1008, 1009-10 (SD NY 1949). In turn, the store filed an action against its insurer, contending that the insurer was obligated (1) to pay the judgment, and (2) to reimburse the store for the costs of its defense. *Id.*

The trial court had first concluded that the insurer did *not* have a duty to *indemnify* the pet store, because the judgment against it fell within the exclusion for "use" of the elevator. On that holding, the Second Circuit affirmed. 178 F2d at 751. The trial court had further held, however, that the insurer *did* have a duty to *defend* the store. The Second Circuit affirmed that conclusion as well. Judge Hand's opinion began with the four-corners rule: the duty to defend depends on a comparison between the policy and the allegations in the complaint. *Id*. In that case, the policy *would* cover liability from the plaintiff falling into an unguarded shaft, but the policy would *not* cover liability resulting from the "use" of the elevator. *Id*. at 752. The allegations in the complaint, however, did not clearly indicate whether the injury would be covered. The allegations were ambiguous as to whether the injury had been from "use" of the elevator or from falling down an unguarded shaft.

In the face of a complaint that failed to allege the determinative facts, the court concluded that "we should resolve the doubt in favor of the insured." *Id*. The court reasoned that the parties had intended for the insurer to defend in *any* case in which the insurer would eventually become liable to pay. *Id*. The only exception would be if an injured plaintiff alleged a claim that "was outside the policy," but the plaintiff ultimately received a judgment that was covered by the policy. *Id*. Otherwise, "[w]hen *** the complaint comprehends an injury which *may be* within the policy, we hold

that the promise to defend includes it." *Id.* at 753 (emphasis added).

Applying that standard to the facts, the Second Circuit upheld the judgment that the insurer had a duty to defend. The complaint "did not limit the plaintiff's recovery" to an injury excluded from the policy ("use" of the elevator). *Id.* The complaint's allegations were "consistent" with the plaintiff falling into an open and unguarded elevator shaft, an event that would have been covered by the policy. *Id.*

This court follows the same rule. In *Blohm et al. v. Glens Falls Ins. Co.*, 231 Or 410, 373 P2d 412 (1962), this court explained that:

> "*** Where the complaint does not state facts sufficient to bring the case clearly within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. In other words, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor."

231 Or at 415-16 (internal quotation marks and citation omitted). *See also Bresee Homes*, 353 Or at 117 ("Any ambiguity concerning potential coverage is resolved in favor of the insured."); *Marleau*, 333 Or at 91 (insurer has duty to defend if complaint is unclear but could reasonably be interpreted to allege covered claim); *Ledford*, 319 Or at 400 (ambiguities in complaint are resolved in favor of duty to defend).[5]

---

[5] Various treatises also concur that ambiguous complaints are construed in favor of the duty to defend. The *New Appleman on Insurance Law Library Edition* states:

> "If any of the facts pleaded in the complaint establishes the potential for covered liability the insurer must defend. Any doubt as to whether a defense obligation exists must be resolved against the insurer and in favor of the insured[.]"

Jeffrey E. Thomas, 3 *New Appleman on Insurance Law Library Edition* § 17.01[2][a] (2016) (footnotes omitted). *See also* Lee R. Russ and Thomas F. Segalla, 14 *Couch on Insurance* § 200:11 (3d ed 2016) ("When coverage under the duty to defend depends on an outstanding factual dispute, the disputes must be resolved in favor of coverage until the insurer conclusively establishes that there is no potential for coverage." (Footnote omitted.)); 1 *Law and Practice of Insurance Coverage Litigation* § 4:14 (July 2016) ("For an insurer to avoid the obligation to defend, it must be concluded as a matter of law that there is no possible factual or

Applying that approach in *Ledford*, this court stated the rule as whether the complaint "*could*, without amendment, impose liability for conduct covered by the policy." 319 Or at 399-400 (emphasis added). The court held that the insurer there had no duty to defend because the complaint "alleged only conduct that *clearly falls outside* the coverage of the policy." *Id*. at 403 (emphasis added). Similarly, in *Marleau*, this court summarized the rule as whether the complaint, "without amendment, *may* impose liability for conduct covered by the policy." 333 Or at 89 (emphasis added; internal quotation marks and citation omitted).

Most recently, in *Bresee Homes*, this court described its interpretive approach this way:

> "Regardless of the presence of ambiguity or unclarity in the complaint, the key question is whether the court can reasonably interpret the allegations to include an incident or injury that falls within the coverage of the policy."

353 Or at 117.

Oregon Auto nevertheless argues that the duty to defend does not exist merely because the complaint does not "rule out" coverage. It maintains instead that the complaint must "rule in" coverage. In support of that argument, Oregon Auto quotes the following statement from *Ledford*:

> "If the facts alleged in the complaint against the insured do not fall within the coverage of the policy, the insurer should not have the obligation to defend."

319 Or at 400 (internal quotation marks and citation omitted).

In context, however, *Ledford* makes it clear that the insurer has a duty to defend, even if the complaint is unclear about whether it alleges a covered injury:

> "The insurer has a duty to defend if the complaint provides *any basis* for which the insurer provides coverage.

---

legal basis on which the insurer might eventually be held obligated to indemnify the insured under any provision of the insurance policy." (Footnote omitted.)); Fischer, 25 UC Davis L Rev at 153 n 30 (stating that insurer has duty to defend unless the insurer shows "that there is no possibility of coverage under any potential coverage in the policy").

> Even if the complaint alleges some conduct outside the coverage of the policy, the insurer may still have a duty to defend if certain allegations of the complaint, without amendment, could impose liability for conduct covered by the policy. Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured."

*Id.* (emphasis in original; citations omitted). Accordingly, *Ledford* explained, the question was whether the facts alleged in the complaint at issue "may reasonably be interpreted to include conduct within the coverage of [the insurance] policy." *Id.*

*Ledford* implicitly drew a distinction between the broad principle that an insurer has no duty to defend unless the complaint alleges a covered claim and the way in which that principle applies to particular cases. What *Ledford* did implicitly, this court did more expressly in *Casey v. N. W. Security Ins. Co.*, 260 Or 485, 491 P2d 208 (1971). This court's opinion in that case also began with the proposition that:

> "The insurer has a duty to defend only if the claim made against the insured is one covered by the insurer."

260 Or at 489 (citation omitted). The court recognized, however, the problems with applying that principle when it was not clear whether a particular complaint alleged a covered claim. The court held that, in case of doubt, the insurer has a duty to defend; otherwise the insured would lose the benefit of his or her bargain.

> "The difficulty [with applying the general principle] arises when there is doubt as to coverage. This doubt sometimes cannot be resolved until a judgment is entered in litigation between the insured and the insurer. This is too late; the lawsuit by the injured party has been filed and probably gone to judgment before this time. The insurer has contracted with its insured to defend him. This benefit to the insured would be curtailed if it could be withheld in the event of a dispute about coverage."

*Id.* at 489. *See also Bresee Homes*, 353 Or at 125 n 1 (quoting that analysis with approval).

We thus reject Oregon Auto's assertion that there is no duty to defend unless the complaint "rules in" coverage. Instead, as this court most recently held in *Bresee Homes*, the question is whether, "[r]egardless of the presence of ambiguity or unclarity in the complaint, * * * the court can reasonably interpret the allegations to include an incident or injury that falls within the coverage of the policy." 353 Or at 117. Having set out the governing legal standard, we turn to the facts of this case.

## C.   *Applying Four-Corners Rule to Complaint Here*

On review, the only issues relate to the requirements of the "additional insured" policy provision for West Hills. The provision at issue states that West Hills is an additional insured "only with respect to liability arising out of [L&T's] ongoing operations performed for [West Hills]." Oregon Auto's duty to defend West Hills thus depends on whether the court can reasonably interpret the allegations of the Arbor Terrace complaint to include an incident or injury that falls within the coverage of the policy. *Bresee Homes*, 353 Or at 117; *Ledford*, 319 Or at 399-400. We answer that question in the affirmative.

First, the policy here names West Hills as an additional insured. The complaint asserted claims against West Hills, and so West Hills might be subject to some liability. In addition, the policy provides that West Hills is an additional insured as to "liability arising out of [L&T's] ongoing operations performed for [West Hills]." The complaint expressly alleged that West Hills was liable for subcontractor operations that had been performed for West Hills: specifically, that West Hills's subcontractors used "improper construction means and methods" in their operations, and West Hills was liable in negligence for not preventing the subcontractors from doing so. L&T may not have been be identified by name in the complaint, but that is not the issue. The allegations of the complaint reasonably could be interpreted to result in West Hills being held liable for conduct covered by the policy: L&T's operations for West Hills.

The only remaining question is whether the allegations could result in West Hills being held liable for L&T's

"*ongoing* operations." As noted, Oregon Auto has argued that "ongoing operations" requires that any covered damages must have occurred before L&T completed its work on the project. The Court of Appeals did not find it necessary to resolve that question, 273 Or App at 166, and neither do we. The complaint alleges that damages had occurred by the time the owners purchased their townhomes. It is possible that the damages occurred earlier. Reasonably interpreted, then, the complaint could result in West Hills being held liable for conduct covered by the policy. *See Bresee Homes*, 353 Or at 122-23 (concluding insurer had duty to defend even though complaint made no allegations about when damages had occurred).

Under the four-corners rule, then, Oregon Auto had a duty to defend West Hills. The complaint's allegations, reasonably interpreted, could result in West Hills being held liable for damages covered by the policy.

In so concluding, we have treated the "additional insured" provision here the same as any other factual condition found in the policy. In *Shearer*, however, the Court of Appeals treated conditions relating to whether a party was an "insured" differently from other conditions relating to coverage. 237 Or App at 476-77. Without deciding whether *Shearer* was correctly decided, we conclude that that case is distinguishable on these facts. *Shearer* was decided in the context of a policy that created an open class of "additional insureds." The class was defined entirely by the relationship between the otherwise unidentified class members and the named insured. An insurer who received a tender of defense from such a person, unknown to the insurer and unnamed on the policy, would have had no way to know whether the alleged insured had any relationship to the insurance contract at all.

That issue is not presented here, however. West Hills is designated by name in the policy here as an additional insured. The condition found in the policy—"only with respect to liability arising out of [L&T's] ongoing operations performed for [West Hills]"—does not relate to whether West Hills is an additional insured. Instead, any facts pertinent to that condition have to do with the particular claims

against West Hills that Oregon Auto agreed to cover. By their nature, such facts are indistinguishable from facts pertaining to any other limitation on coverage that might be found in the policy (*e.g.*, whether the claim involved "property damage," whether the damages occurred within the policy period, whether the claim is excluded because the insured inflicted the injury intentionally). Accordingly, we resolve the parties' dispute with respect to those facts based on the familiar principle that, regardless of ambiguity or lack of clarity, the duty to defend is triggered if the complaint's allegations, reasonably interpreted, could result in the insured being held liable for damages covered by the policy.

## IV.  CONCLUSION

In this case, Oregon Auto issued a liability policy naming West Hills as an additional insured. When Arbor Terrace filed a complaint against West Hills, West Hills tendered the defense to Oregon Auto. Oregon Auto contractually agreed to apply the four-corners rule to its duty to defend the insureds under the policy. Under that provision, if a complaint against the insureds alleged a covered claim, then Oregon Auto had a duty to defend. To give effect to that contractual obligation, we resolve uncertainty about the allegations in favor of the duty to defend. The complaint's allegations here, reasonably interpreted, could have resulted in West Hills being held liable for damages covered by the policy.[6] The trial court and Court of Appeals therefore correctly held that Oregon Auto had a duty to defend.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[6] Again, it is important to distinguish between the duty to defend and the independent duty to indemnify. If the issue had been indemnification, Oregon Auto could have argued whether any damages actually awarded to Arbor Terrace were within the contractual terms of the policy.