**Filed: December 31, 2012**

IN THE SUPREME COURT OF THE STATE OF OREGON

BRESEE HOMES, INC.,
an Oregon corporation,

Petitioner on Review,

v.

FARMERS INSURANCE EXCHANGE,
a California corporation,

Respondent on Review.

(CC 06C12550; CA A136397; SC S057573)

Argued and submitted May 13, 2010.

On review from the Court of Appeals.*

J. Michael Alexander, Swanson, Lathen, Alexander, McCann & Prestwich, PC, Salem, argued the cause and filed the brief for petitioner on review.

Misty Edmundson, Soha & Lang P.S., Seattle, argued the cause and filed the brief for respondent on review.

Cody Hoesly, Larkins Vacura LLP, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Rick Pope, Kirklin Thompson & Pope LLP, Portland, filed the brief for *amicus curiae* Oregon Home Builders Association, Home Builders Association of Marion & Polk Counties, Central Oregon Home Builders Association, Associated General Contractors Oregon-Columbia Chaper, Walsh Construction Co., and Adair Homes, Inc.

Diane L. Polscer, Gordon & Polscer, LLC, Portland, filed the brief for *amicus curiae* State Farm Fire and Casualty Company. With her on the brief was Brian C. Hickman.

Gregory L. Baird, Gordon & Polscer, LLC, Portland, filed the brief for *amicus curiae* Complex Insurance Claims Litigation Association. With him on the brief were Laura A. Foggan, Amanda Schwoerke, and Wiley Rein LLP.

Before Balmer, Chief Justice, and Durham, De Muniz, Kistler, Walters, and Linder.**

DURHAM, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to that court for further proceedings.

*Gillette and Landau, JJ., did not participate in the decision of this case.

**Appeal from an order of the Marion County Circuit Court, Joseph Ochoa, Judge. 227 Or App 587, 206 P3d 1091 (2009).

DURHAM, J.

Plaintiff, Bresee Homes, Inc. (Bresee), seeks review of a Court of Appeals decision that affirmed a trial court judgment in favor of defendant, Farmers Insurance Exchange (Farmers). *Bresee Homes, Inc. v. Farmers Inc. Exchange*, 227 Or App 587, 206 P3d 1091 (2009). The dispute concerns the correct interpretation of the commercial general liability (CGL) policy that Farmers sold to Bresee. For the reasons explained below, we reverse.

The trial court granted a motion for summary judgment in favor of Farmers and denied the cross-motion for partial summary judgment filed by Bresee. On review, this court examines the summary judgment record, in accordance with ORCP 47 C, to determine whether the pleadings and any supporting documents on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). Bresee's claims allege that Farmers breached its obligations under the policy (a) to defend Bresee against a claim against Bresee, and (b) to indemnify Bresee against any liability for damages arising out of the claim. Those are separate obligations requiring a separate analysis. *Paxton-Mitchell Co. v. Royal Indemnity Co.*, 279 Or 607, 610-11, 569 P2d 581 (1977).

On July 15, 2005, the Joneses filed an action against Bresee for breach of contract and negligence regarding the construction of their home. The Joneses alleged that, on April 2, 1999, they had contracted with Bresee, a contractor, for the construction of a custom home in Salem. They alleged that Bresee had failed to install flashing

properly and that the exterior synthetic stucco, known as the Exterior Insulated Finish System (EIFS), leaked water into the interior and failed. They sought $52,580 in damages from Bresee, consisting of both the cost to repair the siding work and damages arising from the failure of the siding.

According to Bresee, Farmers had sold a CGL policy to Bresee that was in effect over various successive periods from the late 1980s to June 17, 2003. When Bresee received the Joneses' complaint, Bresee tendered the Joneses' claims to Farmers and requested a defense and indemnification under the CGL policy. When Bresee tendered the Joneses' claims, Farmers, acting through its lawyer, denied the tender, citing the "products - completed operations hazard" exclusion in the policy. We discuss the pertinent provisions of the CGL policy and the exclusion below.

Bresee filed this action against Farmers for breach of contract and for a declaratory judgment, asserting, as noted above, that Farmers had contractual obligations to provide a defense against the Joneses' action and to indemnify Bresee for any liability to the Joneses. Farmers filed a motion for summary judgment and argued that the "products - completed operations hazard" endorsement to the CGL policy precluded any liability to Bresee. Bresee filed a cross-motion for partial summary judgment and argued that the endorsement did not apply and that, even if it did, the court should conclude that the Joneses' complaint, reasonably construed, could be read to include a covered loss, *i.e.*, property damage occurring before completion of construction and damages arising from the failure of a product installed by a subcontractor.

Bresee also contended that extrinsic evidence of Farmers's adjustment and

2

settlement of multiple nearly identical EIFS damage claims by other homeowners against Bresee was relevant for two reasons. First, it constituted some evidence of how the parties intended the CGL policy to apply to similar claims by homeowners against Bresee. Second, it amounted to some proof that Farmers had waived its position that the "products - completed operations hazard" endorsement precluded any coverage of the Joneses' claim against Bresee.

The trial court, as noted, granted Farmers's motion for summary judgment and denied Bresee's cross-motion for partial summary judgment. The trial court determined, as an initial matter, that the property damage claimed by the Joneses was included within the coverage portion of the Farmers CGL policy. However, the court ultimately concluded that the "products - completed operations hazard" policy provision defeated any claim for coverage. The trial court also determined that Bresee's claim for a defense was not well taken because Bresee, in submitting evidence on summary judgment, had not established when Bresee's subcontractor had completed the work and when the alleged damage had occurred.

The Court of Appeals did not separately analyze Bresee's claims for a defense against the Joneses' claim and for coverage under Farmers's CGL policy. That court concluded, however, that the trial court was correct in deciding that the policy was unambiguous and afforded no coverage to Bresee. The Court of Appeals affirmed the trial court's decision to grant summary judgment against Bresee. This court granted Bresee's petition for review.

Bresee's claims for a defense and for coverage under the CGL invoke

separate contractual obligations governed by different legal standards. We begin with Bresee's claim for a defense against the Joneses' action.

This court examines two documents to determine whether an insurer has a duty to defend an action against its insured: the insurance policy and the complaint in the action against the insured. *Marleau v. Truck Insurance Exchange*, 333 Or 82, 89, 37 P3d 148 (2001). As this court has explained:

"An insurer has a duty to defend an action against its insured if the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the policy.

"In evaluating whether an insurer has a duty to defend, the court looks only at the facts alleged in the complaint to determine whether they provide a basis for recovery that could be covered by the policy[.] * * * An insurer should be able to determine from the face of the complaint whether to accept or reject the tender of the defense of the action.

"The insurer has a duty to defend if the complaint provides *any basis* for which the insurer provides coverage. Even if the complaint alleges some conduct outside the coverage of the policy, the insurer may still have a duty to defend if certain allegations of the complaint, without amendment, could impose liability for conduct covered by the policy. Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured."

*Ledford v. Gutoski*, 319 Or 397, 399-400, 877 P2d 80 (1994) (emphasis in original; citations omitted).

Regardless of the presence of ambiguity or unclarity in the complaint, the key question is whether the court can reasonably interpret the allegations to include an incident or injury that falls within the coverage of the policy. *Blohm et al v. Glens Falls Ins. Co.*, 231 Or 410, 416, 373 P2d 412 (1962). As this court observed in *Marleau*, "[N]either the failure to identify correctly the claims nor the failure to state them

4

separately defeats the duty to defend." 333 Or at 91. As long as the complaint contains allegations that, without amendment, state a basis for a claim covered by the policy, the duty to defend arises. *Id.* The inclusion in the complaint of other allegations describing claims that fall outside the policy's coverage is immaterial. *See Abrams v. General Star Indemnity Co.*, 335 Or 392, 400, 67 P3d 931 (2003) (if the complaint contains allegations of covered conduct, the insurer has a duty to defend even if the complaint also contains allegations of excluded conduct). Any ambiguity concerning potential coverage is resolved in favor of the insured. *Ledford*, 319 Or at 400.

We turn now to the provisions of the CGL policy that Farmers issued to Bresee. The parties agree that the following policy terms were in effect between June 17, 1998, and June 17, 2003; that the parties renewed the policy annually; and that the policy pertains to the claim that the Joneses filed against Bresee.

The policy, as pertinent to this dispute, consists of a broad insuring agreement stating the insurer's promise to pay specified damages and to defend the insured against claims brought against the insured to recover those damages. A list of exclusions from coverage follows the insuring agreement. Finally, the policy sets out a list of definitions of terms and phrases in the policy. We set out below those relevant parts of the policy:

> "Throughout this policy the words 'you' and 'your' refer to the Named
> Insured shown in the Declarations, and any other person or organization
> qualifying as a Named Insured under this policy.

> "* * * * *

> "SECTION I - COVERAGES

"COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

"1.     Insuring Agreement

"a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. * * *

"* * * * *

"2.     Exclusions

"This insurance does not apply to:

"* * * * *

"j.     Damage to Property

"'Property damage' to:

"(1)    Property you own, rent, or occupy;

"* * * * *

"(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

"(6)    That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

"* * * * *

"Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products - completed operations hazard.'

"* * * * *

6

**"l.** Damage to Your Work

"'Property damage' to 'your work' arising out of it or any part of it and included in the 'products - completed operations hazard.'

"This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

"\* \* \* \* \*

"SECTION V - DEFINITIONS

"\* \* \* \* \*

"14. 'Products - completed operations hazard':

"a. Includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except:

"(1) Products that are still in your physical possession; or

"(2) Work that has not yet been completed or abandoned. However, 'your work' will be deemed completed at the earliest of the following times:

"(a) When all of the work called for in your contract has been completed.

"(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

"(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

"Work that may need service, maintenance, correction, repair or replacement but which is otherwise complete, will be treated as completed.

"\* \* \* \* \*

7

"15. 'Property damage' means:

"a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

"b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

"* * * * *

"18. 'Your product' means:

"a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

"(1) You;

"(2) Others trading under your name; or

"(3) A person or organization whose business or assets you have acquired; and

"b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such good or products.

"'Your product' includes:

"a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'; and

"b. The providing of or failure to provide warnings or instructions.

"'Your product' does not include vending machines or other property rented to or located for the use of others but not sold.

"19. 'Your work' means:

"a. Work or operations performed by you or on your behalf; and

"b. Materials, parts or equipment furnished in connection with

8

such work or operations.

"'Your work' includes:

"a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'; and

"b. The providing of or failure to provide warnings or instructions."

The policy was accompanied by a separate form labeled as the "EXCLUSION - PRODUCTS - COMPLETED OPERATIONS HAZARD" endorsement, which states:

"This endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE Part.

"This insurance does not apply to 'bodily injury' or 'property damage' included within the 'products - completed operations hazard.'"

Several aspects of the insurance policy are noteworthy. First, the coverage agreement, and specifically the duty to defend Bresee, would apply to the Joneses' claims if the property damages that their complaint sought constitutes "property damage" to which the policy applied.

Second, the policy incorporates qualifying wording for some property damage exclusions that has the effect of limiting or cancelling the particular exclusion. For example, in the coverage portion of the policy, paragraph 2.j.(6) excludes property damage to property "that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." However, the policy declares that that exclusion is inapplicable "to 'property damage' in the 'products - completed operations hazard.' Similarly, paragraph 2.l. excludes "'[p]roperty damage' to 'your work' arising out of it or

9

any part of it and included in the 'products - completed operations hazard[,]'" but then declares that that exclusion is inapplicable "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

Finally, the policy definition of the "products - completed operations hazard," which the property damage exclusions just cited incorporates, is itself subject to an exception under section V, paragraph 14.a.(2) for "[w]ork that has not been completed." The definition then sets out several factual circumstances under which the policyholder's "work" is deemed completed.

In construing the policy to determine whether it gives rise to a duty to defend, we construe the text of the policy as a whole, rather than view particular parts of the policy in isolation. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 836 P2d 703 (1992). That principle applies with equal force to the construction of policy endorsements, exclusions, and exceptions. We may conclude, after construction of the policy as a whole, that a particular provision nullifies or limits coverage or that one policy provision controls over another. That conclusion, however, must result from the application of familiar principles of interpretation to the policy as a whole, not from an attempt to give particular weight or effect to one provision because it is an exclusion or exception to the policy's coverage.

Some aspects of the Joneses' complaint are noteworthy. The allegations do not state whether the claimed damages from the alleged breach of contract and negligence occurred before or after the completion of Bresee's work. From all that appears from a reading of the complaint, the described property damage occurred, or

10

could have occurred, when Bresee's work was neither completed nor "deemed complete" under the "products - completed operations hazard," as defined in the policy.

Farmers argues that this court should conclude that the property damage alleged in the Joneses' complaint occurred after Bresee completed its work, in part because that complaint was filed in 2005 and used verbs in their past tense (*e.g.*, "flashing was not properly installed," "the exterior synthetic stucco system failed") to describe the alleged deficient performance. We are not persuaded. The allegations describe events and damage that occurred in the past, but which could have occurred at any time after contract execution. The allegations describing past deficient performance and damage do not necessarily say anything about the date Bresee completed its work.

The Joneses' allegations also do not permit this court to conclude that the alleged damage arose from Bresee's work that "may [have] need[ed] service, maintenance, correction, repair or replacement but which is otherwise complete" within the meaning of the "products - completed operations hazard" definition. The allegations say nothing about whether Bresee's work was "otherwise complete," or whether Bresee's work might need service, maintenance, etc., to be regarded as completed.

Farmers also argues that Bresee bore the burden of demonstrating that the work was *not* completed when the alleged property damage occurred, in order to avoid the effect of the "products - completed operations hazard" exclusion. That is not correct. With regard to the duty to defend, Bresee has no burden to come forth with facts beyond those alleged in the Joneses' complaint. Those allegations stated the pertinent facts when Bresee tendered the Joneses' claims to Farmers and requested a defense. Our analysis of

11

the duty to defend focuses on those allegations whether or not different or additional facts might be adduced at trial.

The Court of Appeals applied a different analysis of Farmers's motion for summary judgment, and we take this opportunity to correct it. As noted, the Court of Appeals observed that Farmers had presented some evidence in support of its motion for summary judgment indicating that Bresee had completed work on the Joneses' home in 1999, and that Bresee had presented no contradictory evidence that the claimed damage had occurred before Bresee had completed its work. The Court of Appeals concluded, as a result, that the record contained no issue of fact on that question and that Farmers was entitled to summary judgment. The court reasoned that Bresee had a specific burden to produce evidence that an exception (*i.e.*, damage arising out of uncompleted work) to the exclusion -- the "products - completed operations hazard" -- applied. *See Bresee*, 227 Or App at 593.

The Court of Appeals was mistaken in that analysis. Farmers relied on facts concerning the completion of Bresee's work that were not alleged in the Joneses' complaint. Farmers could discern from facts alleged by the Joneses and from its policy that the Joneses potentially could prove that the claimed damage arose before Bresee completed its work. When Bresee tendered the Joneses' complaint for defense, the factual question of whether the claimed damages had occurred before or after the completion of Bresee's work was an issue that the litigation between the Joneses and Bresee might determine, and, once established, could affect Farmers's duty to indemnify Bresee. The potential factual determinations in that litigation, however, are not the facts

12

that governed Farmers's duty to defend Bresee. When Bresee tendered the Joneses' claims, only the facts alleged by the Joneses and the terms of the Farmers policy governed Farmers's duty to provide a defense.

Farmers also posits that the court's analytical focus in this context is not confined strictly to the insurance policy and the underlying complaint, because this court's cases have left the door open for consideration of other "compelling evidence of no coverage" outside the complaint that would nullify a duty to defend. *See Casey v. N.W. Security Ins. Co.*, 260 Or 485, 489, 490 P2d 208 (1971) (applying that criterion); *Marleau*, 333 Or at 91 (quoting that criterion in *Casey*). However, the qualification that *Casey* recognized is a narrow one and has no application here.

In *Casey*, the insured drove his automobile into Shelton, causing injuries. Shelton sued the insured, alleging assault and battery. He then amended his complaint to also allege negligence. Ordinarily, the alleged facts would have been sufficient to state a claim covered by the insured's automobile liability policy, and thus, the facts would have given rise to the insurer's duty to defend the insured against Shelton's claim. This court, however, considered other evidence in the record. That evidence demonstrated that, before Shelton filed his complaint, the insured had been criminally prosecuted for his conduct and had been convicted of intentionally injuring Shelton with his automobile. The court held that that evidence was available for consideration because it established beyond dispute that the insured was estopped to assert that he did not act intentionally in injuring Shelton. 260 Or at 490-92. The court declined to permit the insured to relitigate a key factual issue that the criminal prosecution already had conclusively resolved against

13

him. The incontrovertible determination that the insured had intentionally injured Shelton established that the insured had no insurance coverage, and thus, the insurer had no duty to defend. *Id.* at 492.

This case involves no court determination that precludes coverage like the criminal court adjudication considered in *Casey*. This court has consistently focused its analysis on the policy and the underlying complaint,[1] *Marleau*, 333 Or at 91, and we adhere to that approach in this case.

The foregoing discussion indicates that the "products - completed operations hazard" exclusion does not eliminate Farmers's duty to defend Bresee against the Joneses' claims. We conclude that the Farmers policy provides a basis for coverage of property damage claims that the "products - completed operations hazard" exclusion

---

[1] *Casey* explained why the court, in the absence of a judicial determination that precluded coverage, confines its analysis of a claim based on the duty to defend to the insurance policy and the complaint against the insured:

"The insurer has a duty to defend only if the claim made against the insured is one covered by the insurer. *MacDonald v. United Pacific Ins. Co.*, 210 Or 395, 399, 311 P2d 425 (1957).

"The difficulty arises when there is doubt as to coverage. This doubt sometimes cannot be resolved until a judgment is entered in litigation between the insured and the insurer. This is too late; the lawsuit by the injured party has been filed and probably gone to judgment before this time. The insurer has contracted with its insured to defend him. This benefit to the insured would be curtailed if it could be withheld in the event of a dispute about coverage. *For this reason we have adopted the rule that in the absence of any compelling evidence of no coverage, the insurer owes a duty to defend if the injured claimant can recover under the allegations of the complaint upon any basis for which the insurer affords coverage.*"

260 Or at 489 (emphasis added).

does not eliminate.  Under the facts alleged in the Joneses' complaint, Bresee could have liability for conduct covered by the policy.  Under this court's standard, as discussed in *Marleau* and *Ledford*, Farmers owed a duty to defend Bresee.  The trial court erred in granting Farmers's motion for partial summary judgment and in denying Bresee's cross-motion for summary judgment on the issue of the duty to defend.

The parties have submitted additional arguments regarding Farmers's ultimate duty to pay the benefits of its policy to Bresee.  We cannot determine the answer to that question at this point.  Bresee informed the trial court that the underlying case involving the Joneses had been settled.  However, neither party disclosed to the trial court the cost of indemnifying Bresee as a consequence of that agreement.  Neither party advised the Court of Appeals or this court of the terms of the settlement or how they may affect any issue concerning indemnification.  As Bresee correctly argued, whether Farmers has a duty to pay must be determined on the basis of the ultimate facts proven at trial or, as in this case, the facts that formed the basis for the settlement.  We cannot determine, from the record made below, whether the policy affords a basis for indemnification.  We conclude that neither party was entitled to summary judgment on the issue of indemnification.

The decision of the Court of Appeals is reversed.  The judgment of the circuit court is reversed and the case is remanded to that court for further proceedings.

15