**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

APR 20 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ADRIANUS ALKEMADE; RACHELLE ALKEMADE, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> QUANTA INDEMNITY CO., a Colorado domiciled insurance company; GENERAL FIDELITY INSURANCE COMPANY, a South Carolina domiciled insurance company, <br><br> Defendants-Appellees. | No.   14-35605 <br><br> D.C. No. 6:12-cv-00844-MC <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Oregon
Michael J. McShane, District Judge, Presiding

Argued and Submitted March 9, 2017
Portland, Oregon

Before:  O'SCANNLAIN, FISHER and FRIEDLAND, Circuit Judges.

Rachelle and Adrianus Alkemade appeal the district court's grant of

summary judgment in favor of General Fidelity Insurance Company (GFIC) and

---

[*]       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Quanta Indemnity Insurance Company in this coverage dispute. We have jurisdiction under 28 U.S.C. § 1291, and we review the district court's summary judgment ruling de novo. We reverse in part, vacate in part and remand. A plausible and reasonable interpretation of the insurance contracts permits the conclusion that damage caused by a first negligent act does not continue, change or resume when later damage is sustained after a repair that would have fixed the problem absent a second negligent act.

## I

Meltebeke Built Paradise Homes, Inc. sold the Alkemades a new home with an inadequate crushed rock foundation that sat atop expansive soils. For nine years, the Alkemades' home suffered extensive structural damage as a result. Eventually, Meltebeke repaired all existing damage and hired an engineering firm to install a helical pier foundation. The parties do not dispute that the helical piers would have prevented any future damage to the Alkemades' home had they been installed correctly. But they were not. Consequently, the Alkemades' home suffered the same type of structural damage as before.

The Alkemades sued for the damage caused by Meltebeke's negligent supervision of the helical pier installation. Two of Meltebeke's insurers, Quanta and GFIC, refused to defend Meltebeke, arguing that Meltebeke's knowledge of

2

the damage caused by the original, defective construction prevented coverage under a known damages provision in their policies. As part of a settlement, Meltebeke assigned to the Alkemades the right to sue Quanta and GFIC for their failure to defend or indemnify. The Alkemades then sued Quanta and GFIC. Quanta and GFIC moved for summary judgment based, in part, on their interpretation of the known damages provision. The district court concluded Quanta and GFIC had the better argument:

> Meltebeke's knowledge prior to the policy period of expanding soils, which caused structural damage . . . , means Meltebeke knew of a risk of property damage from expanding soils prior the policy periods. . . . The same type of structural property damage, from the same danger Meltebeke knew of – and attempted unsuccessfully to address – for 10 years prior to the policy period, necessarily means that according to the terms of the policy, Meltebeke knew of the property damage prior to the policy period.

*Alkemade v. Quanta Indem. Co.*, 28 F. Supp. 3d 1125, 1132 (D. Or. 2014). The Alkemades appealed.

We agree this interpretation of the known damages provision is reasonable, but so is the Alkemades' alternative interpretation.

Under Oregon law, an insurer has a duty to defend if any allegation in the complaint, if true, would lead to coverage. *See Bresee Homes, Inc. v. Farmers Ins. Exch.*, 293 P.3d 1036, 1039 (Or. 2012) (citing *Ledford v. Gutoski*, 877 P.2d 80, 82-

3

83 (Or. 1994)).  To determine whether any allegation in the complaint leads to coverage, we interpret the insurance contract.  Contract interpretation is a question of law in Oregon, *see N. Pac. Ins. Co. v. Hamilton*, 22 P.3d 739, 741 (Or. 2001), and Oregon law controls here, *see Kaady v. Mid-Continent Cas. Co.*, 790 F.3d 995, 996 (9th Cir. 2015).  We start with the terms and conditions in the contract.  *See* Or. Rev. Stat. § 742.016(1); *see also Hoffman Constr. Co. of Alaska v. Fred S. James & Co.*, 836 P.2d 703, 706 (Or. 1992).  Those terms and conditions are ambiguous if they are susceptible to competing, plausible interpretations.  *See Groshong v. Mut. of Enumclaw Ins. Co.*, 985 P.2d 1284, 1287 (Or. 1999); *see also Hamilton*, 22 P.3d at 741.  If the insured offers a competing plausible and reasonable interpretation of the insurance policy, that interpretation governs regardless of whether the insurer offers a different interpretation that is also plausible and reasonable.  *See Hoffman*, 836 P.2d at 706.

Under the general commercial liability policies Meltebeke purchased, Quanta and GFIC promised to:

> [P]ay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply.

4

> We may, at our discretion, investigate any "*occurrence*"[1]
> and settle any claim or "suit" that may result.

This promise to defend was subject to the known damages provision, which says:

> This insurance applies to . . . "property damage" only if: . . .
> Prior to the policy period, no insured . . . knew that the . . .
> "property damage" had occurred, in whole or in part. If
> such a listed insured . . . knew, prior to the policy period,
> that the . . . "property damage" occurred, then any
> *continuation, change or resumption* of such . . . "property
> damage" during or after the policy period will be deemed
> to have been known prior to the policy period.

In short, Quanta's and GFIC's policies cover unknown property damage sustained during the policy periods caused by "occurrences" for which Meltebeke was liable.

The Alkemades contend a plausible and reasonable interpretation of the contract is that damage sustained because of Meltebeke's negligent repair is not a continuation, change or resumption of the original damage. We agree.

## II

### A

Our first task is determining whether the Alkemades' interpretation of the known damages provision is plausible. This is a low bar. *See Hoffman*, 836 P.2d at 706 ("[G]iven the breadth and flexibility of the English language, the task of

---

[1] An "occurrence" is an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."

5

suggesting plausible alternative meanings is no challenge to capable counsel."). We conclude it was met.

The known damages provision excludes from coverage damage known by the insured, in whole or in part, that occurred before the policy period began. If any such damage was known, then any continuation, change or resumption of that damage is also deemed known. The term "continuation, change or resumption" is not defined by the policies, so we consider its ordinary meaning in both the "immediate context" of the provision and the "policy as a whole." *Mut. of Enumclaw Ins. Co. v. Rohde*, 13 P.3d 1006, 1008 (Or. Ct. App. 2000). In both contexts, the term "continuation, change or resumption" is used to modify damage previously known, implying the damage previously known and the damage later suffered share a cause.[2] In light of this causal relatedness, it is plausible to conclude that damage sustained after a repair that would have fixed the problem absent new negligence is not a "continuation, change or resumption" of previously known damage.

---

[2] *See, e.g.*, *Jardine v. Maryland Cas. Co.*, 2011 WL 6778798, at *1-2, *10-12 (N.D. Cal. Dec. 27, 2011) (discussing whether damage to one wall caused by a cosmetic plaster treatment was a continuation, change or resumption of known damage to another wall caused by the same plaster treatment), *aff'd*, 532 F. App'x 662 (9th Cir. 2013); *Quanta Indem. Co. v. Davis Homes, LLC*, 606 F. Supp. 2d 941, 947-48 (S.D. Ind. 2009) (discussing whether suicide was a continuation, change or resumption of bodily injury from an electrical shock).

No Oregon court has addressed whether damage sustained after a negligent repair is a continuation, change or resumption of known damage, *i.e.*, the damage necessitating the need for a repair. Quanta and GFIC contend unpublished, non-binding cases outside of Oregon "overwhelmingly support" the conclusion the Alkemades' interpretation is not plausible. We are not persuaded. Setting aside the important issue of whether these other jurisdictions interpret insurance contracts the way Oregon law requires, most of the cases cited by Quanta and GFIC do not address the question of whether damage sustained after a repair is a continuation, change or resumption of known damage.

Here, there are two possible reasons the Alkemades' home was damaged by contact with the expansive soils: (1) the original construction and (2) the negligent helical pier installation. It is undisputed that had the helical piers been installed competently, later damage would not have occurred. It is therefore plausible to treat the new damage as distinct from – rather than a continuation, change or resumption of – the former damage. *See Westfield Ins. Co. v. Wensmann, Inc.*, 840 N.W.2d 438, 454 (Minn. Ct. App. 2013). Therefore, the Alkemades' interpretation satisfies the plausibility requirement.

**B**

7

The next question is whether their interpretation is reasonable, a requirement that is "examined in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole." *Hoffman*, 836 P.2d at 706. Considering the known damages provision and the policy as a whole, we conclude the Alkemades' interpretation is reasonable not only for the same reasons it is plausible, as discussed above, but also for three additional reasons.

*First*, within the context of the known damages provision, words of limitation are used to assess whether "*the* . . . 'property damage'" at issue was a "continuation, change or resumption" of "*such* . . . 'property damage'" previously known. "Use of the definite article 'particularizes the subject which it precedes' and indicates that the claimed damage must be the same as the known damage," *i.e.*, that "the claimed damage must be related to the known damage." *Kaady*, 790 F.3d at 998-99. The Alkemades' interpretation is reasonable because it requires a causal relatedness between the previously known damage and the damage at issue.

*Second*, the Alkemades' interpretation avoids reading new terms into the policy. Under the interpretation adopted by the district court, Meltebeke's knowledge of "a *risk* of property damage" meant Meltebeke "knew of the property damage prior to the policy period." *Alkemade*, 28 F. Supp. 3d at 1132 (emphasis

8

added).  But the known damages provision does not say knowledge of a "risk" prevents coverage.  The plain language says knowledge of "property damage" prevents coverage.  Further, not all property damage counts under the policy.  Only a subset of property damage for which Meltebeke is liable is eligible for coverage, subject to the contracts' exclusions.  Were this court to adopt Quanta's or GFIC's interpretation, a new exclusion would be added: damage caused by known risks.

*Third*, the Alkemades' interpretation fits with Oregon's right to repair statutes and others mandating insurance coverage for contractors.  Property owners in Oregon are not allowed to commence legal action related to construction defects against a contractor unless the property owner has notified the contractor of the mistake and given him or her an opportunity to propose a solution.  *See* Or. Rev. Stat. §§ 701.565, 701.570(5)(c)(A), 701.580.  Contractors must also carry insurance for this work.  *See id.* § 701.073(1).  Under Quanta's or GFIC's interpretation, any repair contractor's knowledge of the conditions that led to the need for a failed repair would preclude coverage.  But repair contractors *must* know of the damage they are asked to repair.  Under Quanta's or GFIC's interpretation, such a contractor's knowledge of the previous property damage would preclude coverage for a later negligent act even though that contractor would not have been liable for the previous damage.

9

## C

Under Oregon law, the Alkemades prevail if they offer a plausible and reasonable interpretation of the insurance policies that leads to coverage. They have done so. It is plausible and reasonable to conclude the damage for which they seek coverage was not a change, continuation or resumption of previous damage because the damage was the product of a new negligent act – *i.e.*, the careless repair job that, if competently performed, would have prevented the damage from occurring. In reaching this conclusion, we do not opine on the reasonableness of an argument that the policy language at issue here would also provide coverage in a case in which a non-negligent repair could not reasonably have been expected to fix the problem. Nor do we hold that the Alkemades' interpretation is the *sole* plausible or reasonable interpretation, only that the Alkemades' interpretation is plausible and reasonable given the facts of this case. Therefore, Quanta and GFIC had a duty to defend.[3]

---

[3] In a Federal Rule of Appellate Procedure 28(j) letter filed after the conclusion of oral argument, GFIC argued we should decide as a matter of law that GFIC had no duty to defend or indemnify because "the record shows" Meltebeke knew of damage to the Alkemades' home after the helical piers were installed but before GFIC's policy began. We are not persuaded. First, Oregon law does not allow consideration of "the record" outside the complaint when evaluating a duty to defend. As the district court acknowledged, the Alkemades' complaints are "silent" as to when Meltebeke became aware of damage following installation of

(continued...)

We reverse the district court's judgment on the duty to defend.[4] Further, because the duty to indemnify is dependent on currently disputed facts, *see Ledford*, 877 P.2d at 84, we vacate the judgment with respect to the duty to indemnify and remand for further proceedings consistent with this decision.

Costs on appeal are awarded to appellants.

**REVERSED IN PART, VACATED IN PART AND REMANDED.**

---

[3](...continued)
the helical piers. *See Alkemade*, 28 F. Supp. 3d at 1130. That silence controls. *See Bresee*, 293 P.3d at 1042. Second, with respect to the duty to indemnify, the evidence cited by GFIC is one-sided. The Alkemades offered counter-evidence, including David Meltebeke's testimony that he could not recall when he realized the helical pier installation had failed. In light of this contradictory evidence, what Meltebeke knew and when he knew it is a genuine issue of material and disputed fact that will need to be resolved to determine whether GFIC had a duty to indemnify. *See Nw. Pump & Equip. Co. v. Am. States Ins. Co.*, 925 P.2d 1241, 1243 (Or. Ct. App. 1996) (in banc) ("[T]he duty to indemnify is established by proof of actual facts demonstrating a right to coverage."). Summary judgment was not appropriate.

[4] Quanta and GFIC raised other arguments supporting their claim they had no duty to defend that were not addressed by the district court but have not renewed those arguments on appeal. The arguments are therefore waived. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1212 n.6 (9th Cir. 2016); *Estate of Barton v. ADT Sec. Servs. Pension Plan*, 820 F.3d 1060, 1067 n.6 (9th Cir. 2016); *see also* Fed. R. App. P. 28.

11