DEHOOG, P. J.
*790 This is an action between insurance companies concerning the duty to defend against claims arising out of construction defects. Defendant American States Insurance Company was the insurer of Gary Thompson dba Portland Plastering (Thompson), a subcontractor hired by general contractor Super One, Inc. (Super One) to do construction work on hotels in Portland and Beaverton. The parties' dispute arose when the eventual owners of the two hotels sued Super One, alleging that negligent work by Super One and others had resulted in water intrusion and related damage. Super One tendered the defense of both actions to its insurers and, relying on its status as an "additional insured" on Thompson's insurance policy, also to defendant. After defendant declined to defend Super One, several of Super One's insurers (plaintiffs) brought this separate action seeking, in part, declaratory relief and contribution from defendant to the costs of defending Super One.[1] Following a hearing on the parties' cross-motions for partial summary judgment, the trial court entered a limited judgment declaring that defendant owed a duty to defend Super One in the construction defect cases. Defendant appeals that judgment, assigning error to the trial court's grant of plaintiffs' motion and the denial of its own motion. We conclude that the trial court did not err in concluding that defendant owed Super One a duty to defend. Accordingly, we affirm.
In an appeal involving cross-motions for partial summary judgment where "the losing party assigns error both to the grant of summary judgment to the other party and to the denial of its own motion for summary judgment, we review to determine 'whether there are any disputed issues of material fact and whether either party was entitled to judgment as a matter of law.' " Hynix Semiconductor Mfg. America v. EWEB , 276 Or.App. 228, 230-31, 367 P.3d 927 (2016) (quoting *791 Vision Realty, Inc. v. Kohler , 214 Or.App. 220, 222, 164 P.3d 330 (2007) ). Here, there are no disputed material facts; the only question is one of law.
To provide context for the underlying facts, we begin with the legal principles governing an insurer's duty to defend.
"An insurer's duty to defend, according to the widely accepted 'four-corners' rule, is determined by comparing the complaint to *236 the insurance policy. The rule refers to the four corners of the complaint; it also sometimes is referred to as the eight-corners rule (for the four corners of the complaint plus the four corners of the policy). However denominated, under that rule, one compares the allegations in the complaint to the insurance policy's terms. If the allegations in the complaint assert a claim covered by the policy, then the insurer has a duty to defend. If the allegations do not assert a claim covered by the policy, then the insurer has no duty to defend. By limiting the analysis to the complaint and the insurance policy, the four-corners rule generally prevents consideration of extrinsic evidence."
West Hills Development Co. v. Chartis Claims , 360 Or. 650, 653, 385 P.3d 1053 (2016) ( West Hills ) (citations omitted).
In West Hills , the Supreme Court acknowledged that applying the four-corners rule to real world complaints can be challenging. Id. at 660, 385 P.3d 1053. Ambiguities are resolved in favor of defending the insured:
" 'Where the complaint does not state facts sufficient to bring the case clearly within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. In other words, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor.' "
Id. at 662, 385 P.3d 1053 (quoting Blohm et al v. Glens Falls Ins. Co. , 231 Or. 410, 415-16, 373 P.2d 412 (1962) (internal quotation marks and citation omitted)); see also Bresee Homes, Inc. v. Farmers Ins. Exchange , 353 Or. 112, 117, 293 P.3d 1036 (2012) ("Any ambiguity concerning potential coverage is resolved in favor of the insured."). Additionally, it does not matter if there are *792 also claims in the complaint that are outside of the insurance coverage; "[a]s long as the complaint contains allegations that, without amendment, state a basis for a claim covered by the policy, the duty to defend arises."[2] Bresee Homes, Inc. , 353 Or. at 117, 293 P.3d 1036.
Having set out the legal framework for our analysis, we turn to the facts. Defendant issued a general liability policy to Thompson, which Thompson renewed several times.[3] The policy required defendant to pay all sums that the insured became legally obligated to pay as damages due to property damage to which the policy applied. The policy also imposed a duty on defendant to defend the insured against any lawsuit seeking those damages. The insurance policy's provisions, however, apply only to property damages occurring "during the policy period."
The policy contains an "additional insured" endorsement that modifies the definition of who is an "insured" under the policy. The endorsement states, in part, that an "insured" includes
"any person or organization for whom [Thompson is] performing operations when [Thompson] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on [Thompson's] policy. Such person or organization is an additional insured only with respect to liability arising out of [Thompson's] ongoing operations performed for that insured. A person's or organization's *237 status as an insured under this endorsement ends when [Thompson's] operations for that insured are completed."
*793 The language of the endorsement changed in the course of a policy renewal, but not in any substantive way affecting the parties' arguments on appeal.
In 2007, PIH Beaverton, LLC (PIH) brought a construction defect action against Super One, Thompson, and several "Doe" defendants. PIH's complaint alleged that PIH was the present owner of the hotel that those defendants built in Beaverton, and that the hotel had incurred damages due to construction defects that had "resulted in water intrusion and property damage to, among other things, the siding, sheathing, framing and trim on the [hotel]." The complaint alleged that Super One had been the general contractor for the construction of the Beaverton hotel and that Thompson was the subcontractor who had installed a synthetic stucco cladding system on the hotel known as an exterior insulation finish system (EIFS). PIH alleged "[s]pecific construction defects" in the hotel due to "faulty workmanship, improper or defective materials, or noncompliance with applicable building codes, industry standards, or manufacturer's specifications and guidelines."
According to PIH's complaint, Thompson, as the subcontractor who had installed EIFS on the hotel, owed PIH, "as a foreseeable future plaintiff, a duty to provide its labor and materials in a non-negligent manner" and Thompson's "negligence caused or contributed to the construction defects." In regard to Super One's negligence, PIH alleged that,
"[a]s the general contractor, Super One provided labor and materials, and hired and supervised subcontractors that provided labor and materials, to construct the [hotel]. As such, Super One owed PIH Beaverton, as a foreseeable future plaintiff, a duty to provide its labor, materials and supervision in a non-negligent manner. Super One's negligence caused or contributed to the construction defects alleged."
In addition, PIH alleged that all defendants were negligent in "[f]ailing to construct the [hotel] properly," "[f]ailing to completely repair the construction defects and resulting property damage to the [hotel]," and "[f]ailing to properly supervise subcontractors or other workers who participated in construction of the [hotel]."
*794 PIH also alleged that "[d]efendants knew or should have known, while PIH Beaverton and its predecessor in interest were unaware, that there were significant construction defects affecting the [hotel]. Defendants knew or should have known that the [hotel] was improperly constructed. Each of the defendants had this knowledge before the [hotel] was sold to PIH Beaverton." Further, according to PIH, those defects "have caused significant property damage to the [hotel]" and the property damage is ongoing and will worsen over time.
In 2008, a company named BHG GAH PDX, LLC (BHG) likewise brought an action against Super One and "Doe" defendants, asserting claims that were similar to the claims in the PIH lawsuit.[4] BHG alleged in its complaint that it was the present owner of a hotel located in Portland and that it had suffered damages because the hotel had "construction defects, which have resulted in water intrusion and property damage to, among other things, the siding, sheathing, framing, trim, and sheetrock" of the hotel. BHG alleged that Super One was the general contractor of record for construction of that hotel, and alleged that the Doe defendants were one or more additional subcontractors or suppliers that furnished labor, material, services, or equipment for construction of the hotel. The complaint stated that,
"[a]s the general contractor, Super One provided labor and materials, and hired, *238 supervised, and inspected the work of subcontractors that provided labor and materials, to construct the [hotel]. As such, Super One owed BHG, as a foreseeable future owner, a duty to provide its labor, materials and supervision in a non-negligent manner."
In addition, BHG alleged that "[d]efendants knew or should have known, while BHG and its predecessor in interest were *795 unaware, that there were significant construction defects affecting the [hotel]" and that defendants had this knowledge before the hotel was sold to BHG.
BHG alleged that Super One was negligent in several ways, including supervision of its subcontractors, by, among other things, "[f]ailing to coordinate, schedule, oversee, inspect, and supervise properly subcontractors and/or workers who participated in construction of the [hotel]"; "[p]roviding improper plans, specifications, instruction, and direction to subcontractors and/or workers"; and "[f]ailing to notify subcontractors and/or workers of improper construction means and methods so that reasonable steps could be taken to correct such issues."
BHG further alleged that "[f]aulty workmanship, improper or defective materials, improper design, and improper installation or noncompliance with applicable building codes, industry standards, or manufacturer's specifications and guidelines" had caused property damage to the hotel and that the property damage "is ongoing, and will worsen over time." BHG listed specific construction defects in the complaint, including defects related to the EIFS that was installed on the building.
Super One tendered the defense of the PIH and BHG claims to Thompson and its insurers, including defendant, asserting in its cover letters that Super One was an additional insured under Thompson's insurance policy. Defendant denied Super One's tenders of defense on both claims.
Plaintiffs undertook the defense of Super One in the construction defect lawsuits, then brought this action against defendant, in part, to recover some of the associated defense costs. Plaintiffs moved for partial summary judgment on their claim that defendant owed Super One a defense. Defendant filed a cross-motion for partial summary judgment on the same issue. The trial court concluded that defendant owed Super One a defense, granted plaintiffs' motion, and denied defendant's motion. The trial court's order states, in part:
"Super One was named as an additional insured in [Thompson's] insurance policy to the extent that Super One *796 could be held liable for damages caused by [Thompson's] negligence. As to the BHG Complaint, which does not specifically name [Thompson] as a subcontractor of Super One, the allegations *** are sufficient to allege that Super One may be liable for the negligence of its subcontractors. The fact that Super One was named as an additional insured in the [Thompson] insurance policy at issue in the BHG Complaint, combined with the allegations in *** the BHG Complaint is enough to trigger [defendant's] duty to defend Super One. ***
"The allegations in both the BHG and [PIH] complaints are vague as to the timeframe in which the damages occurred, and therefore could include damages that occurred during 'ongoing operations.' *** Paragraph 23(c) of the [PIH] Complaint and paragraph 15(b), (c), and (e) of the BHG Complaint both actually suggest that damage occurred during ongoing operations.
"Further, [defendant's] argument that the 'present owners' do not have a valid cause of action is a defense to be raised, and is not a basis for refusing to defend."
On appeal, defendant contends that it had no duty to defend Super One in the PIH and BHG actions under its insurance policy, reprising arguments it made to the trial court in the summary judgment proceedings. Defendant does not assert that there was an issue of material fact that would preclude summary judgment. See ORCP 47 C ("The court shall grant the motion if the pleadings, *** declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law."). Rather, defendant makes three arguments in *239 support of its contention that the trial court erred as a matter of law in concluding that the complaints triggered defendant's duty to defend. Defendant focuses on the policy language that states that Super One is an additional insured "only with respect to liability arising out of [Thompson's] ongoing operations" performed for Super One. Defendant argues that the complaints (1) did not allege that Super One was liable for Thompson's operations, only for its own; (2) did not allege liability for "ongoing" operations as required by the endorsements to the policy; and (3) did not allege that property damage occurred "during the policy period" as required by the "Coverages" section of the policy. *797 Plaintiffs respond that the complaints sufficiently raise the possibility that (1) Super One could be held liable for Thompson's negligence, (2) property damage occurred during Thompson's ongoing operations, and (3) property damage occurred during the policy period. Plaintiffs also note that the Supreme Court's recent decision in West Hills , 360 Or. 650, 385 P.3d 1053, considered substantially similar facts and many of the same arguments being advanced here in concluding that the insurer owed a duty to defend. Plaintiff contends that we should reach the same conclusion here.[5]
We agree with plaintiffs that West Hills provides substantial guidance for resolving the issues on appeal and, therefore, describe it in some detail. West Hills Development Company (West Hills) contracted to build townhomes and hired a subcontractor, L&T Enterprises, Inc. (L&T), to work on the project. The subcontract between West Hills and L&T required L&T to name West Hills as an additional insured on its liability insurance policy. The policy listed West Hills by name and stated that West Hills was an insured "only with respect to liability arising out of [L&T's] ongoing operations performed for [ West Hills]." 360 Or. at 656, 385 P.3d 1053. The homeowners association for the development subsequently brought an action against West Hills, alleging that the townhomes had defects that led to damage from water intrusion. Id.
The association's complaint, which did not specifically name L&T, alleged that West Hills had been negligent in various ways. The complaint also alleged
"that West Hills's subcontractors had been negligent, and that West Hills was liable because of that negligence. Specifically, the complaint alleged that West Hills had hired and supervised subcontractors and had been negligent in '[f]ailing to properly *** oversee, inspect, and supervise *** subcontractors' and '[f]ailing to notify *** subcontractors *** of improper construction means and methods.' The complaint contained very little information regarding the time when the damages allegedly occurred. The complaint did allege, however, that when the owners purchased the *798 townhomes, the defects in the townhomes already 'existed and had already started to cause property damage.' "
Id. at 656-57, 385 P.3d 1053.
West Hills sought a defense from L&T's insurer, but the insurer refused to defend West Hills on the ground that the damages alleged in the complaint did not arise from "ongoing operations" as required by the insurance policy; rather, according to the insurer, they arose from "completed operations." Id. at 657, 385 P.3d 1053. Following the conclusion of the underlying action, West Hills sued L&T's insurer, seeking a share of its defense costs. The insurer argued to the trial court that the term "ongoing operations" in the insurance policy "required that the damages sought must have been incurred while L&T was actually working on the project, not later," and that the complaint in the underlying action "did not show that damages had been incurred while L&T was actually working on the project." Id. at 658, 385 P.3d 1053. West Hills responded that the complaint triggered the insurer's duty to defend, because its allegations "were sufficient to create the possibility that West Hills would have been subject to liability for L&T's ongoing operations." Id. The trial *240 court granted judgment for West Hills. Id. We affirmed. West Hills Development Co. v. Chartis Claims , 273 Or.App. 155, 168, 359 P.3d 339 (2015), aff'd , 360 Or. 650, 385 P.3d 1053 (2016).
On review of our decision, the Supreme Court rejected the defendant's contention that there is no duty to defend unless the complaint "rules in" coverage. West Hills , 360 Or. at 665, 385 P.3d 1053. Instead, the court stated, "the question is whether, '[r]egardless of the presence of ambiguity or unclarity in the complaint, * * * the court can reasonably interpret the allegations to include an incident or injury that falls within the coverage of the policy.' " Id. (quoting Bresee Homes, Inc. , 353 Or. at 117, 293 P.3d 1036 ). The court applied the four-corners rule and, ultimately, concluded that "the complaint's allegations * * *, reasonably interpreted, could have resulted in West Hills being held liable for damages covered by the policy." West Hills , 360 Or. at 667, 385 P.3d 1053.
Notably, the court decided West Hills without resorting to extrinsic evidence. Id. at 652, 385 P.3d 1053. Here, as in West Hills , each party raises the possibility of using extrinsic evidence *799 for various purposes. We have previously recognized an exception to the four-corners rule to allow the use of extrinsic evidence for the limited purpose of determining "whether the party seeking coverage was actually an insured within the meaning of the policy." Fred Shearer & Sons, Inc. v. Gemini Ins. Co. , 237 Or.App. 468, 476, 240 P.3d 67 (2010), rev. den. , 349 Or. 602, 249 P.3d 123 (2011) (emphasis in original). Here, however, defendant does not dispute that Super One was an entity that potentially had coverage as an additional insured on Thompson's policy. That is, defendant does not contend that there is an issue of fact regarding Super One's identity as an additional insured-for example, defendant does not challenge the fact that Thompson and Super One had a written contract that required Thompson to add Super One as an additional insured to its insurance policy, nor does defendant dispute that, during at least one policy year, Super One was specifically named in a policy endorsement as an additional insured. Rather, the parties' primary dispute pertains to a condition found in the additional-insured endorsements to the policies-that coverage for Super One is only with respect to liability arising out of Thompson's ongoing operations for Super One. That condition does not relate to whether Super One is an additional insured. See West Hills , 360 Or. at 666, 385 P.3d 1053 (stating that the policy condition requiring liability to arise out of the subcontractor's ongoing operations did not relate to whether the general contractor was an additional insured). Accordingly, our previously recognized exception does not apply here and we do not consider any extrinsic evidence.[6]
In support of its first contention that, in the BHG and PIH complaints, there are no allegations of liability arising out of Thompson's operations to trigger a duty to defend Super One, defendant argues that the complaints did *800 not allege that Super One was liable for the defects (if any) in Thompson's work; instead, the complaints alleged only that Super One was liable for its own negligence, both in the work it performed itself and in directing and supervising the work of others. Defendant further notes that Thompson was not even named in the BHG complaint.[7] Defendant also argues that, to *241 determine that Thompson was one of the unnamed subcontractors in the BHG complaint, the court would have to look outside the four corners of the complaint.[8] In response, plaintiffs argue that there is no material distinction between this case and West Hills , where the insurer was required to provide a defense.
We agree with plaintiffs that West Hills supports the trial court's conclusion that defendant has a duty to defend. As in that case, the general contractor here was an additional insured on a subcontractor's insurance policy; the operative complaint asserted claims against the general contractor, giving rise to the possibility of the general contractor being subjected to liability; and the insurance policy limited the additional insured's coverage to liability arising out of the subcontractor's ongoing operations performed for the general contractor. See West Hills , 360 Or. at 665, 385 P.3d 1053. In West Hills , the court stated:
"The complaint expressly alleged that West Hills was liable for subcontractor operations that had been performed *801 for West Hills: specifically, that West Hills's subcontractors used 'improper construction means and methods' in their operations, and West Hills was liable in negligence for not preventing the subcontractors from doing so. L&T may not have been identified by name in the complaint, but that is not the issue. The allegations of the complaint reasonably could be interpreted to result in West Hills being held liable for conduct covered by the policy: L&T's operations for West Hills."
Id. at 665, 385 P.3d 1053.
Likewise, in allegations that are substantially similar to those in West Hills , the BHG and PIH complaints each present the possibility that Super One could be liable for failing to prevent Thompson's negligent operations. BHG alleged that subcontractors' negligence caused or contributed to construction defects in the hotel, that Super One "hired, supervised, and inspected the work of subcontractors," and that Super One was negligent in "[f]ailing to coordinate, schedule, oversee, inspect, and supervise properly subcontractors and/or workers who participated in construction" of the hotel and in "[f]ailing to notify subcontractors *** of improper construction means and methods so that reasonable steps could be taken to correct such issues." PIH alleged that Thompson's negligence caused or contributed to the construction defects in the hotel, that Super One "hired and supervised subcontractors that provided labor and materials to construct" the hotel, and that Super One failed to take corrective measures and failed to properly supervise subcontractors who participated in construction of the hotel. As in West Hills , the allegations in the complaints at issue here could reasonably be interpreted to result in Super One being held liable for Thompson's operations for Super One.
Furthermore, as quoted above, in West Hills , the court rejected the insurer's assertion that there could not be a duty to defend because the subcontractor, L&T, was not identified by name in the complaint. 360 Or. at 665, 385 P.3d 1053. We similarly reject defendant's argument as to BHG's complaint.
Defendant's second contention is that there is no duty to defend Super One because the complaints did not allege that Super One had liability for "ongoing operations"
*802 of Thompson. Defendant argues that, as used in the insurance policy, "ongoing *242 operations" means Thompson's operations while they were still in process, not after they were completed. That is, according to defendant, the policy imposes a temporal restriction and covers only liability for property damage that occurred while Thompson was still on the jobsite. Plaintiffs dispute defendant's interpretation of the policy language, and argue that "arising out of ongoing operations" simply requires a causal connection between Thompson's operations and Super One's liability. However, plaintiffs also assert that it is unnecessary to resolve that dispute because, even under defendant's narrow interpretation of the policy language, the allegations of the complaints are sufficient to trigger a duty to defend. Plaintiffs again rely on West Hills for support.
In West Hills , the insurer argued that the limitation to "ongoing operations" in the subcontractor's policy meant that only damages that occurred before the subcontractor completed its work on the project would be covered. 360 Or. at 666, 385 P.3d 1053. The court did not find it necessary to resolve that question and explained:
"The complaint alleges that damages had occurred by the time the owners purchased their townhomes. It is possible that the damages occurred earlier. Reasonably interpreted, then, the complaint could result in West Hills being held liable for conduct covered by the policy. See Bresee Homes , 353 Or. at 122-23 [293 P.3d 1036] (concluding insurer had duty to defend even though complaint made no allegations about when damages had occurred).
"Under the four-corners rule, then, [the insurer] had a duty to defend West Hills. The complaint's allegations, reasonably interpreted, could result in West Hills being held liable for damages covered by the policy."
Id . Plaintiffs argue that the allegations in the BHG and PIH complaints regarding the timing of the damage are, like those at issue in West Hills , sufficiently indeterminate to permit the possibility that they occurred while Thompson was performing operations on the two hotels. We agree.
Neither complaint in this case alleges any specific dates; indeed, the complaints contain little information at all *803 as to when the damages allegedly occurred. Each complaint alleges that the property damage caused by the defendants is "ongoing," and also alleges that Super One and its subcontractors "knew or should have known, while [BHG, PIH, and each of their predecessors in interest] were unaware, that there were significant construction defects affecting" the hotel. Specific allegations of negligence include "[f]ailing to disclose known construction defects and resulting property damage to [BHG, PIH, and their predecessors] in interest," "[f]ailing to warn [BHG, PIH, and their predecessors] in interest of the multiple construction defects in, and property damage to," each hotel, and failing to completely repair the construction defects and resulting property damage to each hotel. Those allegations, like the allegations in West Hills , suggest that there was existing property damage at the time that BHG and PIH purchased their respective hotels and leave open the possibility that the damage occurred earlier, during Thompson's "ongoing operations" as defendant understands that phrase. Thus, each "complaint's allegations, reasonably interpreted, could result in [Super One] being held liable for damages covered by the policy." West Hills , 360 Or. at 667, 385 P.3d 1053. Accordingly, the allegations in the complaints here are sufficient to require defendant to provide a defense. Id. at 662, 385 P.3d 1053 (stating general rule that an insurer " 'is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy' " (quoting Blohm , 231 Or. at 415-16, 373 P.2d 412 )); see also Security Natl. Ins. Co. v. Sunset Presbyterian Church , 289 Or.App. 193, 203, 408 P.3d 233 (2017) ("A duty to defend exists if the complaint alleges the possibility that damage occurred during 'ongoing operations.' ").
Defendant's third contention is also based on a temporal restriction in the insurance policy: The policy applies only to property damage that occurs during the policy period. According to defendant, the complaints cannot be read to allege property damage that occurred during the applicable policy periods because the last policy period ended in 2000, while BHG did not purchase *243 the Portland hotel until 2005 or later, and PIH did not even exist until 2006 and was not the original purchaser of the hotel in Beaverton. Defendant reasons that, because BHG and PIH could not sue for property *804 damage that occurred before they owned their respective hotels, the property damage they claim in their lawsuits cannot have occurred during the policy period. In response, plaintiffs argue, in part, that defendant's argument is wrong because it relies on impermissible extrinsic evidence.
Plaintiffs are correct that, as we explained above, under the four-corners rule, the extrinsic evidence proffered by defendant-the time frames in which BHG and PIH likely purchased their hotels-is not to be considered. As previously noted, neither complaint in this case alleges any specific dates; the complaints are silent as to when BHG and PIH purchased their respective hotels. Because defendant's argument is premised on the fact that the hotels were purchased after the policy period ended-a fact we cannot consider without resorting to extrinsic evidence-we do not reach it.
In sum, "regardless of ambiguity or lack of clarity, the duty to defend is triggered if the complaint's allegations, reasonably interpreted, could result in the insured being held liable for damages covered by the policy." West Hills , 360 Or. at 667, 385 P.3d 1053. That duty is triggered here. The trial court did not err in granting plaintiffs' motion for partial summary judgment and denying defendant's motion for partial summary judgment.
Affirmed.

In the trial court proceedings, the plaintiffs in this insurance dispute were four of Super One's insurers. After this appeal was filed, PIH Beaverton, LLC, became the successor in interest to those insurance companies and was substituted as the plaintiff on appeal. To avoid confusion, we continue to refer to Super One's insurers as plaintiffs.

We recently recognized a limitation on the scope of the duty to defend in certain circumstances. Security Natl. Ins. Co. v. Sunset Presbyterian Church , 289 Or.App. 193, 205, 408 P.3d 233 (2017). There we concluded, in a case involving construction defects, that, under ORS 30.140, which voids certain provisions in construction agreements, an insurer's duty to defend does not extend to all claims. As explained below, 289 Or.App. at 800 n. 7, 408 P.3d at 240 n. 7, any potential application of ORS 30.140 in this case was not preserved for our consideration.

The summary judgment record reflects that defendant issued a one-year liability policy to Thompson in 1995, which was renewed four times, with coverage ending in 2000. The parties do not dispute which policy year is pertinent; rather, the parties' dispute is focused on the application of certain policy language that did not change in any substantive way over the years.

Plaintiffs contend that the BHG complaint was amended to, among other things, specifically name Thompson as a defendant. The parties disagree whether we can consider the amended complaint in determining defendant's duty to defend. Defendant argues that only the original complaint is pertinent because defendant denied Super One's tender of defense on the basis of that complaint. Our conclusion that the trial court correctly concluded that defendant had a duty to defend is based on the language contained in the original BHG complaint; therefore, it is not necessary to resolve whether the amended complaint could also be considered.

The Supreme Court decided West Hills after the parties had filed their briefs. The parties each filed a memorandum of additional authorities to address the question of what legal effect, if any, West Hills has on the issues raised in this appeal.

In our opinion in West Hills Development Co. , we stated, relying on Shearer , that extrinsic evidence could be considered to identify West Hills as an additional insured. 273 Or.App. at 163, 359 P.3d 339. In its opinion, the Supreme Court acknowledged that we had articulated an exception to the four-corners rule in Shearer ; the court did not, however, decide whether Shearer was correctly decided. West Hills , 360 Or. at 654, 666, 385 P.3d 1053. The court observed that West Hills was designated by name as an additional insured in the policy and that the issue of who was an insured was therefore not presented, as it had been in Shearer ; that rendered it unnecessary to address that issue. Id. at 666, 385 P.3d 1053.

Defendant also argues, for the first time on appeal-based on its assertion that the complaints allege that Super One was solely responsible for all of the construction defects-that ORS 30.140, which voids any "provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of *** damage to property caused in whole or in part by the negligence of the indemnitee," applies to the duty to defend and supports defendant's denial of a defense. Defendant did not invoke ORS 30.140 below, and we decline to reach that unpreserved argument. See ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court ***."); State v. Shepherd , 236 Or.App. 157, 163, 236 P.3d 738 (2010) (we need not interpret a statute when the parties failed to preserve a challenge to the meaning of the statute).

As noted previously, a difference between the BHG and PIH complaints is that Thompson is specifically named in the PIH complaint but is not named in the original BHG complaint. With the exception of that issue, defendant argues that it owed no duty to defend in the PIH lawsuit for the same reasons that it did not owe a duty to defend Super One in the BHG litigation. Because, as explained in the text, we disagree with defendant that the fact that Thompson was not named in the BHG complaint affects the result here, we combine our discussion of the two complaints.